## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robenson Jean-Pierre and Jean Metelus, on behalf of themselves and all others similarly situated, | Civil Action No. : |
| Plaintiffs, | **CORRECTED VERSION** |
| | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| vs. | |
| J&L Cable TV Services, Inc., | **DEMAND FOR A JURY TRIAL** |
| Defendant, | |

### COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Robenson Jean-Pierre and Jean Metelus (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, by and through their attorneys, bring this lawsuit against Defendant J&L Cable TV Services, Inc. ("J&L" or "Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and applicable Massachusetts wage and hour laws.

### INTRODUCTION

1.      This is a collective and class action complaint against Defendant to challenge its policies and practices of denying proper payment of all wages (including minimum and overtime wages, compensation for non-productive work time (i.e. drive time between worksites), reimbursement, and improper deductions),  as well as Defendant's failing to authorize, permit and/or make available meal periods.

2.      Plaintiffs and members of the Collective and Class are current and former non-exempt employees of Defendant, who work as Technicians.  In particular, Plaintiff Robenson Jean-Pierre and Jean Metelus seek to represent other current and former non-exempt employees who

1

work or worked for Defendant as Technicians in the United States. Defendant's unlawful patterns, practices, and conduct described herein apply broadly to members of the Collective, in violation of the FLSA. Plaintiff Jean Metelus also seeks to represent current and former non-exempt employees who work as Technicians in Massachusetts in this class action, and allege Defendant has engaged in unlawful pattern and practices described herein in violation of the Massachusetts wage and hour laws.

3.      Specifically, Plaintiffs pursue claims under the FLSA, 29 U.S.C. § 201, *et seq.* (failure to pay for all hours worked and overtime, including but not limited to overtime as a result of necessary incurred business expenses, and compensation for non-productive work time (i.e. drive time between worksites)) as a collective action on behalf of themselves and other current and former non-exempt employees who work or worked for Defendant as Technicians in the United States.  Plaintiff Jean Metelus also pursues claims under Massachusetts General Laws Chapter (Mass. Gen. L. c.) 149 § 148 (failure to timely pay) and Mass. Gen. L. c. 151 § 1A-B; 149 § 148 (failure to pay overtime, minimum wage, unlawful deductions, and necessarily incurred work-related expenses) on behalf of a class of current and former non-exempt employees who work or worked for Defendant as Technicians in Massachusetts pursuant to Fed. R. Civ. P. 23, M.G.L. c. 149, § 150, and M.G.L. c. 151, §§ 1B, 20.

4.      Defendant requires Plaintiffs and other Technicians to work grueling schedules: typically between 10 to 14 hours per day; 6 days per week.  Technicians work these long hours without proper compensation, breaks, and reimbursement.  In particular, Defendant rarely pays Technicians for all hours worked, including minimum wage and overtime.  Instead, Defendant manipulates time records so that Technicians' hours worked are significantly underreported. Defendant also does not provide Technicians with proper meal breaks.  For example, the grueling

installation schedules imposed by Defendants preclude Plaintiffs and other Technicians from taking meal breaks.

5.       Defendants require Technicians to incur numerous work related expenses, including but not limited to tools, supplies and gasoline, that are not reimbursed. For example, although Technicians are not reimbursed for tools and supplies, they are required to purchase these items in order to properly complete the jobs assigned by J&L.  At all relevant times, J&L has been fully aware that jobs assigned cannot be completed unless the Technician has the proper equipment.  J&L does not supply these tools necessary to complete the jobs assigned, nor do they reimburse the Technicians for tools and supplies purchased by the Technicians.  Furthermore, Technicians pay for their own gasoline.  Plaintiff Jean-Pierre, and Technicians alike, provided receipts to their managers and/or supervisors for gasoline purchased, and did not receive reimbursement for this expenditure. For the first seven (7) months working at J&L, Plaintiff Jean-Pierre provided his gasoline receipts to his direct Manager.  He was never reimbursed. However, Plaintiffs are informed and believe and thereon allege that in approximately January 2017, J&L began supplying gasoline cards to their Technicians.

6.       Similarly, Plaintiffs and other Technicians are not compensated for off-the-clock work.  Off-the-clock work includes, but is not limited to, time spent working before Technicians are allowed to clock in at the beginning of their workday and/or time spent working after Technicians are allowed to clock out at the end of their work day, time spent throughout the day driving from one job to the next, and time spent assisting other Technicians with jobs.  Plaintiffs are informed and believe and thereon allege that J&L refuses to compensate more than one Technician for each job completed.  Therefore, Technicians who assist other Technicians with their jobs are not compensated for this work.

7.    Ultimately, the daily time that Defendant requires Technicians to work without compensation deprives them of substantial amounts of pay to which they are entitled under Massachusetts and Federal law.

8.    Plaintiffs seek full compensation for all unpaid wages, including unpaid minimum wage, straight time, overtime, and wages for the thirty (30) minutes per workday that are automatically deducted for meal periods, as well as compensation for unlawful deductions and work-related expenses.  Plaintiffs also seek declaratory and injunctive relief, including restitution. Finally, Plaintiffs seek reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

9.    The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions.  29 U.S.C. § 216(b).  This Court has original federal question jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Massachusetts state law claims under 28 U.S.C. § 1367(a) because they are so related to this action that they form part of the same case or controversy.

10.    Venue in this district is proper pursuant to 28 U.S.C. § 1391. J&L is incorporated in, and has at all material times has been actively conducting business in, the State of Massachusetts.  A substantial portion of the events described herein took place in this District.

## PARTIES

11.    Plaintiff Robenson Jean-Pierre resides in the State of Florida.  Plaintiff Jean Metelus resides in the State of Florida and worked in both Florida and Massachusetts for J&L.

12.    Plaintiff Jean-Pierre worked for J&L from approximately June 2016 to May 2017 in and around the West Palm Beach/Boca Raton, Florida area.  He worked in the non-exempt, hourly position of Field Technician.

13.    Plaintiff Jean Metelus worked for J&L from approximately September 29, 2016 to January 24, 2018.  He worked from September 29, 2016 to June 24, 2017 and from October 4, 2017 to January 24, 2018 in and around the West Palm Beach/Boca Raton, Florida area. He worked from June 26, 2017 to September 30, 2017 in and around the Boston, Massachusetts area. He worked in the non-exempt, hourly position of Field Technician.

14.    Defendant J&L Cable TV Services, Inc. is incorporated in Massachusetts.  Its headquarters are located at 190 Middlesex St, North Chelmsford, MA 01863.  J&L also has a number of satellite offices in New Hampshire, Maine and Pennsylvania.  It currently does business in numerous states, including but not limited to Massachusetts, Pennsylvania, and Florida.  J&L installs and maintains communications products.

15.    At all relevant times, Defendant has done business under the laws of Massachusetts, has at least one place of business in the State of Massachusetts, including in this judicial district, and has employed Collective and Class Members in this judicial district. Defendant is an employer as that term is used in the applicable Massachusetts law detailed below and the FLSA.

## FACTUAL ALLEGATIONS

16.    J&L provides cable and communication equipment installations on behalf of cable operators, including Comcast, Atlantic Broadband and Spectrum.  Plaintiffs and proposed members of the Class and Collective (hereinafter referred to collectively as "Technicians") currently work and formerly worked for J&L as Technicians and carried out J&L's installation service business.

17.    Technicians' job duties include but are not limited to: driving to customers, installing cable, telephone, and internet service, making repairs, troubleshooting, running and replacing cable lines, running coax cable for new outlets, and educating customers.

## Working as a Technician for Defendant

18.     Technicians' workdays begin early; typically between 6:00 a.m. and 7:00 a.m. At that time, Technicians report to one of Defendant's warehouses, where they gather equipment for the day. If Technicians do not have enough equipment on hand, they wait in line with the other Technicians to gather additional equipment from the warehouse. Plaintiffs are informed and believe that Technicians are not compensated for this pre-shift activity.

19.     Similarly, two to three days per week, Technicians are required to report to the warehouse one hour before their usual start time so that Defendant can perform an inventory of their vehicles. At that time, Technicians are required to pick up additional equipment Defendant deems necessary.  Plaintiffs are informed and believe that Technicians are also not compensated for this pre-shift activity.

20.     Once all uncompensated pre-shift activity is completed, Technicians receive their job assignments for the day – typically around 7:00 a.m.  Technicians are generally assigned five to ten jobs per day.  Each job entails one or more tasks, *e.g.*, installing a cable, setting up internet service, and/or creating an electrical outlet.

21.     For each discrete task, Defendant provides Technicians with a corresponding job code.  Each job code equals a set dollar amount. Throughout the day, and for each job, Technicians document and submit these codes to Defendant as they are completed, so they can be compensated accordingly.

22.     Defendant, however, routinely deletes codes that Technicians have submitted for completed job tasks. Defendant also changes code entries to lower paying codes. Defendant also pressures Technicians to not submit code entries for tasks they complete.

23.   Once Technicians complete one job, they drive to their next job. The drive time often takes over thirty minutes, and can take up to an hour. Technicians are not paid for such drive time.

24.   This work schedule requires Technicians to work long hours. Technicians typically work five (5) to seven (7) days per week, ten (10) to sixteen (16) hours per day, and between fifty (50) and one hundred and twelve (112) hours per week.

25.   Plaintiff Jean-Pierre, specifically, typically worked twelve (12) to sixteen (16) hours per day, six (6) to seven (7) days per week. It was common for him to begin his day around 6:00 a.m. and work until 9:00 p.m.  He often worked between seventy-two (72) and one hundred and twelve (112) hours per week.

26.   Plaintiff Metelus, specifically, typically worked twelve (12) to fourteen (14) hours per day, six (6) days per week. It was common for him to begin his day around 6:30 a.m. and work until 7:30 p.m.  He often worked between seventy-two (72) and eighty-four (84) hours per week.

27.   Much of their work time, however, goes unreported or is outright eliminated from Technicians' compensation.  Defendant systematically pressures Technicians to underreport their hours, and threatens to – and in fact does – unilaterally change Technician time records.  Upon information and belief, Technician supervisors are instructed to reduce Technicians' hours, and encourage Technicians to report fewer hours than those actually worked to increase their hourly rate and show more productivity during the day.  This results in Technicians performing substantial off-the-clock work, including overtime work, which goes unrecorded and unpaid by Defendant. Defendant's directives causes Plaintiffs and other Technicians to underreport several hours per day, upwards of four (4) hours of off-the-clock work per day.

28.   As a natural consequence of Technicians' overwhelming workload, and Defendant's constant pressure to complete all daily job assignments, they are systematically denied

7

the opportunity to take meal breaks.  Defendant, however, routinely requires Technicians to falsely document that they took a thirty-minute meal break. These thirty-minute meal periods – meal periods that rarely, in fact, occur – are uncompensated.  Technicians are forced to eat while they are driving to the next job.   Specifically, Technician supervisors constantly pressure the Technicians to keep working and to move on to the next job. Therefore, Technicians rarely have time to take the required thirty-minute meal period.

29.     If Technicians do not document that they took a thirty-minute meal break, Defendant often alters their time sheets to show a thirty-minute meal break. Defendant's billing department routinely alters time records to include a thirty-minute meal period if the Technician failed to include one, whether the Technician took a thirty-minute meal period or not. This was done pursuant to Defendant's express instructions.

30.     Ultimately, Defendant expects Plaintiffs and other Technicians to work constantly throughout the day, including during breaks. Defendant constantly checks in with Plaintiffs and other Technicians throughout the day, often calling them numerous times to make sure they are constantly working.

**Technicians' Compensation Model**

31.     Technicians are primarily paid on a piece rate basis. Defendant's piece-rate compensation system allegedly uses (1) the total dollar value for piece-rate work per job, and (2) the number of hours recorded as worked, to calculate Technicians' regular hourly rates of pay for each week.  The hours worked are not accurately recorded and severely underreported.  Similarly, job codes completed are not accurately recorded and severely underreported. Technicians are pressured by their managers and supervisors to enter fewer hours worked to show higher productivity and increase their hourly rate.  To calculate Technicians' weekly hourly rate, J&L

adds up the total accepted codes, which correlate to a dollar amount, and then divides this amount by the accepted hours worked.

32.     Plaintiffs are informed, believe, and thereon allege that the policies and practices of Defendant have been similar for Plaintiffs and the Collective and Class Members, regardless of location.

### Defendant's Systematic Violations of Federal and Massachusetts Labor Laws

33.     As a result of the practices described above, J&L systematically violated, and continues to violate, the FLSA and Massachusetts law.

34.     J&L's policy and practice of having Technicians work off-the-clock, its policy of eliminating piece rates and hours worked, and failing to pay for overtime, results in violations of Massachusetts law.  J&L's conduct also reduces the total hours factored into J&L's compensation formula, which necessarily reduces Technicians' total compensation, overtime compensation, as well as the total number of hours compensated at the required, bona fide, overtime rate.  This uniformly violates the FLSA. *See* 29 U.S.C. § 207 (a), (g).

35.     In addition, Defendant routinely denies Plaintiffs and other Technicians timely and compliant off-duty meal periods. Specifically, Defendant routinely refuses to authorize, permit, and/or make available to Technicians timely and compliant thirty-minute meal periods as required by law, while simultaneously automatically deducting thirty (30) minutes from Technicians' pay for meal breaks that are regularly and in fact not taken.

36.     To the contrary, Defendant instructs Technicians to falsely report on their time sheets they took a meal break, with complete indifference as to whether Technicians in fact were able to, and did, take a meal break.  And if Technicians fail to document that they took a meal break, Defendant will alter the time records to reflect a meal period that was never taken.

37.     Beyond Defendant's failure to authorize or permit meal breaks, Technicians' schedules are too busy, and Defendant's pressure to complete job assignments is too constant, for Technicians to take meal breaks.  Defendant monitors Plaintiffs and other Technicians throughout the day, including by telephone, directing them to go from customer to customer without breaks.  As a result, this time worked by Plaintiffs and other Technicians goes unrecorded and uncompensated.

38.     Because Technicians are systematically deprived of the wages to which they are due and entitled, Plaintiffs and members of the Class and Collective also do not receive all pay owed to them at the end of their employment.  Compensation for off-the-clock work, missing piece rates, lowered piece rates, overtime, and unreimbursed expenses, remain outstanding after termination.

39.     Compensation provided to Plaintiff and other Technicians is not paid finally, unconditionally, free and clear of deductions and/or kickbacks.  Defendants require Plaintiffs and other Technicians to incur numerous work-related expenses.

40.     Indeed, Technicians purchase tools before and during their employment with J&L.  When each Technician begins employment, both the managers and supervisors inquire about which tools they have in their possession.  If a Technician does not possess the necessary tools to complete jobs assigned to them, J&L requires each Technician to purchase the necessary tools from J&L.

41.     Technicians must purchase their own tools, such as a wireless drills, drill bits, pliers, screwdrivers, staple guns, nails, splitters, net gear, and various types of cable, gasoline for their trucks, boots, shorts, and pants.  As far as Technicians' mandated uniforms, J&L only

provides a shirt with the Comcast/Xfinity logo.  Despite these requirements, Defendant refuses to compensate Plaintiffs and Technicians for the costs associated with their work-related expenses.

42.     Some of these costs are incurred during weeks in which Plaintiffs work in excess of forty (40) hours. Because Plaintiff and Technicians routinely work in excess of forty (40) hours in a week, and because Defendant does not compensate Plaintiff and other Technicians for these necessarily incurred business expenses – expenses incurred solely for Defendant's benefit – these costs cut into the overtime wages required to be paid to Plaintiffs and other Technicians.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

43.     Plaintiffs bring the First Cause of Action (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of a proposed collection of similarly situated employees defined as:

> All current and former non-exempt hourly employees of Defendant working as Technicians throughout the United States during the time period three years prior to the filing of the original complaint until resolution of this action ("the Collective").

44.     Plaintiffs, individually and on behalf of other similarly situated persons defined above, seek relief on a collective basis challenging Defendant's policy and practice of failing to accurately record all hours worked, and failing to properly pay Plaintiffs for all hours worked, including overtime compensation.  The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from the records of Defendant, and potential opt-ins may be easily and quickly notified of the pendency of this action.

45.     Plaintiffs' claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiffs' FLSA claims are similar to the claims of the members of the Collective.

46.     The members of the Collective are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that requires them to perform work "off-the-clock" and without compensation in violation of the FLSA.

47.     Plaintiffs are representatives of the members of the Collective and are acting on behalf of their interests, as well as Plaintiffs' own interests, in bringing this action.

48.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Collective.  Plaintiffs have retained counsel competent and experienced in employment and wage and hour class action and collective action litigation.

49.     The similarly situated members of the Collective are known to Defendant, are readily identifiable, and may be located through Defendant's records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

50.     Plaintiff Jean Metelus brings the Second through Fourth Causes of Action (the Massachusetts state law claims) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23 and M.G.L. c. 149, § 150, and M.G.L. c. 151, §§ 1B, 20.  The Massachusetts Class is initially defined as:

> All current and former non-exempt hourly employees of Defendant working as Technicians throughout the state of Massachusetts during the time period three years prior to the filing of the complaint, until resolution of this action (the "Class").

51.    **Numerosity**:  Defendant has employed potentially hundreds of non-exempt, hourly employees as Technicians during the applicable statutory period. The number of Putative Class Members are therefore far too numerous to be individually joined in this lawsuit.

52.    **Existence and Predominance of Common Questions**:  There are questions of law and fact common to Plaintiff Jean Metelus that predominate over any questions affecting only individual members of the Class.   These common questions of law and fact include, without limitation:

a.    Whether Defendant fails to authorize and permit, make available, and/or provide Putative Class Members meal periods to which they are entitled in violation of Massachusetts law, which forms part of the basis of Plaintiffs' unpaid wages and overtime claim;

b.    Whether Defendant fails to reimburse Putative Class Members for necessary business expenses in violation of Massachusetts law;

c.    Whether Defendant fails to compensate Putative Class Members for all hours worked, including overtime compensation, in violation of Massachusetts law;

d.    Whether Defendant has a policy and/or practice of requiring Putative Class Members to perform work off-the-clock and without compensation;

e.    Whether Defendant fails to pay Putative Class Members all wages due in a timely manner in violation of Massachusetts law; and

f.    The proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the Putative Class Members as alleged herein.

53.    **Typicality**:  Plaintiff's claims are typical of the claims of the Class.  Defendant's common policies, practices, and course of conduct in violation of law as alleged herein have caused

Plaintiff to sustain the same or similar injuries and damages.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

54.  **Adequacy**:  Plaintiff will fairly and adequately represent and protect the interests of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class he seeks to represent.  Plaintiff has retained Counsel competent and experienced in complex employment and wage and hour class action litigation, and intends to prosecute this action vigorously.  Plaintiff and his Counsel will fairly and adequately protect the interests of the Class.

55.  **Superiority**:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Putative Class Members is not practicable, and questions of law and fact common to Plaintiff predominate over any questions affecting only individual members of the Class.  The injury suffered by each Putative Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible.  Individualized litigation increases the delay and expense to all Parties and the Court.  By contrast, class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

56.  In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, and, in turn, would establish incompatible standards of conduct for Defendant.

57.  Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

58.     Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

59.     Plaintiff intends to send notice to all Putative Class Members to the extent required under applicable class action procedures. Plaintiff contemplates providing a notice or notices to the Massachusetts Class, as approved by the Court, to be delivered through the United States mail. The notice or notices shall, among other things, advise the Massachusetts Class that they shall be entitled to "opt out" of the class certified for the Massachusetts Action if they so request by a date specified within the notice, and that any judgment on the Massachusetts Action, whether favorable or not, entered in this case will bind all Putative Class Members except those who affirmatively exclude themselves by timely opting out.

### FIRST CAUSE OF ACTION

**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**(By Plaintiffs and the Collective Against Defendant)**

60.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

61.     The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

62.     At all times material herein, Plaintiffs and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. *See* 29 U.S.C. § 203(e).

63.     Plaintiffs and the FLSA Class are not exempt from the requirements of the FLSA.

64.     Defendant is a covered employer required to comply with the FLSA's mandates. *See* 29 U.S.C. § 203(d); 29 C.F.R. § 552.109(a).

65.     Defendant has violated the FLSA with respect to Plaintiffs and the Collective, by, *inter alia,* failing to compensate Plaintiffs and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage, failing to provide compensation that is unconditional, free, and clear of deductions and/or kickbacks as described herein, and failure to provide overtime compensation for non-productive work time (i.e. drive time between worksites), *supra*.  *See* 29 U.S.C. § 206; 29 C.F.R. § 531.35; 29 U.S.C. § 207 (a), (g). Defendant has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiffs and the Collective.  29 U.S.C. § 211(c).

66.     Plaintiffs and the Collective are victims of a uniform and company-wide compensation policy.  This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt, hourly employees of Defendant, working in their establishments throughout the United States.

67.     Plaintiffs and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the original complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

68.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

69.     As a result of the aforesaid violations of the FLSA's provisions, compensation,

including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendant from Plaintiffs and the Collective.  Accordingly, Defendant is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

70.     Wherefore, Plaintiffs and the Collective request relief as hereinafter provided.

## SECOND CAUSE OF ACTION

**Violation of the Massachusetts Wage Act Regarding Overtime**
**(By Plaintiff Jean Metelus and the Massachusetts Class Against Defendant)**

71.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

72.     The Massachusetts Fair Minimum Wage Act requires that employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  *See* Mass. Gen. L. c. 151 §1A.

73.     Defendant's conduct, as set forth *supra*, in failing to pay Plaintiff Jean Metelus and class members overtime wages which they earned as a result of their employment violates the Massachusetts overtime law, Mass. Gen. L. c. 151 § 1, 1A.  This claim is brought pursuant to Mass. Gen. L. c. 151 § 1B.

74.     Pursuant to the requirements of Mass. Gen. L. c. 149 § 150, Plaintiff Jean Metelus has filed a wage claim with the office of the Massachusetts Attorney General.  The Attorney General's office issued a right to sue letter on June 7, 2018.

17

## THIRD CAUSE OF ACTION
### Violation of the Massachusetts Wage Act
### G. L. c. 149 §§ 148 and 150
### Failure to Timely Pay Due and Payable Wages
### (By Plaintiff Jean Metelus and the Massachusetts Class Against Defendant)

75.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

76.     As more particularly set forth above, the Defendant violated the Wage Act by failing to timely pay the Plaintiff and putative Class members all wages that are due and payable.

77.     Defendant's failure to pay overtime wages as required by 29 U.S.C. § 207 and Mass. Gen. L. c. 151 § 1, 1A caused Plaintiff and the putative class members to be deprived of the full amount of their earned wages when same became due and payable, including upon their termination.

78.     The Defendant's failures to timely pay due and payable wages were repeated, knowing and willful.

79.     Similarly, Defendant's conduct, as set forth *supra*, in requiring Plaintiff Metelus and putative class members to incur numerous work-related business expenses that should have been properly borne by Defendant, Defendant has violated Mass. Gen. L. c. 149 § 148. This includes, but is not limited to, unlawful deduction from wages incurred for tools, supplies, gasoline and uniforms, purchased both before and during employment. This claim is brought pursuant to Mass. Gen. L. c. 149 § 150.

80.     As a result of Defendant's violation of the Massachusetts Wage Act, Plaintiffs have incurred harm and loss in an amount to be determined at trial, along with mandatory treble damages, attorneys' fees and costs of litigation. Mass. Gen. L. c. 149, § 150.

## FOURTH CAUSE OF ACTION
### Violation of the Massachusetts Wage Act Regarding Minimum Wage
### (By Plaintiff Jean Metelus and the Massachusetts Class Against Defendant)

81.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

82.     The Massachusetts Fair Minimum Wage Act requires that employees be compensated for all hours worked at the full Massachusetts minimum wage.

83.     Defendant's conduct, as set forth *supra*, in failing to pay Plaintiff Jean Metelus and class members minimum wage which they earned as a result of their employment, violates the Massachusetts minimum wage law, Mass. Gen. L. c. 151 § 1 and 7.  In requiring Plaintiff Metelus and putative class members to incur numerous work-related business expenses that should have been properly borne by Defendant, Defendant also violates the Massachusetts minimum wage law. This claim is brought pursuant to Mass. Gen. L. c. 151 § 20.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that this Court enter the following relief:

1.     An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b);

2.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class Members;

3.     An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Massachusetts Class;

4.     Injunctive relief, requiring Defendant to cease its illegal practices;

5.      Restitution for all wages and other damages that are owed to Plaintiffs and class and collective members as described above;

6.      Statutory trebling of all wage-related damages;

7.      Pre-judgment and post-judgment interest;

8.      Back pay damages for unpaid overtime compensation and prejudgment interest to the fullest extent permitted under the law;

9.      Liquidated and exemplary damages to the fullest extent permitted under the law;

10.     Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

11.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims and issues for which Plaintiffs, the Collective and the Class are entitled to a jury.

Date: July 18, 2018                              Respectfully submitted,

                                                 /s/ _Matthew Thomson_____

                                                 Matthew W. Thomson, BBO #682745
                                                 Lichten & Liss-Riordan, P.C.
                                                 729 Boylston Street, Suite 2000
                                                 Boston, MA 02116
                                                 617-994-5800
                                                 617-994-5801 (fax)
                                                 mthomson@llrlaw.com

                                                 Sarah R. Schalman-Bergen (*pro hac vice* to be submitted)
                                                 Stacy Savett (*pro hac vice* to be submitted)
                                                 Shoshana Savett (*pro hac vice* to be submitted)

                                                 BERGER & MONTAGUE, P.C.
                                                 1622 Locust Street

Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
stasavett@bm.net
stsavett@bm.net

Carolyn Hunt Cottrell (*pro hac vice* to be submitted)
David C. Leimbach (*pro hac vice* to be submitted)

SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

Attorneys for Plaintiffs, the Collective and Putative Class