# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBENSON JEAN-PIERRE and JEAN METELUS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>J&L CABLE TV SERVICES, INC.;<br><br>Defendant. | Case No.: 1:18-cv-11499-MLW<br><br>**SUPPLEMENTAL DECLARATION OF MARKENSON MORINVIL** |

## DECLARATION OF MARKENSON MORINVIL

I, Markenson Morinvil declare:

1. I have personal knowledge of the facts stated in this declaration and would testify to those facts if called upon to do so.

2. I am an adult resident of Boyton Beach, Florida.

3. I previously submitted an affidavit in this case.

4. I worked as a Field Technician for J&L Cable TV Services, Inc. (J&L) in Florida, Massachusetts, Maine, and Connecticut between approximately October 2016 through February 2018.

5. I worked for J&L in Florida from approximately October 2016 through July 2017. I continued to work for J&L in Massachusetts, Maine, and Connecticut from July 2017 through August 2017. In August 2017, I returned to Florida and worked for J&L until February 2018.

6. J&L's employment policies, procedures, and practices, including regarding compensation, hours worked, and breaks were similar in Massachusetts, Maine, Connecticut and Florida.

7. During my time working for J&L in Florida, Massachusetts, Maine, and Connecticut, J&L classified me as a non-exempt employee. I performed similar installation and repair of wireless services for J&L's clients in each location I worked. The services for all of the clients included, but were not limited to: installing cable, internet and phone; troubleshooting, running new telephone lines; running coax cables for new outlets; installing ground cable; educating customers on equipment; providing customer service; and replacing and installing drops.

### EXPERIENCE WORKING AT J&L AS A FIELD TECHNICIAN
### TYPICAL WORK DAY OUTSIDE OF FLORIDA

8. In Massachusetts, Maine, and Connecticut, my day typically began at the warehouse. In each of these states, like in Florida, I spent between thirty (30) minutes and one (1) hour waiting in lines with other Technicians to pick up equipment and load up my truck with equipment.

9. As in Florida, my manager, Brian Smith, who was the operations manager for Massachusetts, Maine, and Connecticut, instructed me not to include the time spent at the warehouse during inventory check-ins. Additionally, my supervisor, Brendon, the field supervisor in Massachusetts, Maine, and Connecticut, instructed me not to include the time spent at the warehouse during inventory check-ins. These inventory check-ins occurred when I reported to the warehouse before I started the day's jobs. It is my understanding that I was not paid for these additional hours of work in Florida, Massachusetts, Maine, or Connecticut.

10. Whether I worked in Florida, Massachusetts, Maine, or Connecticut, J&L required me, and other Technicians to attend mandatory weekly meetings to discuss installations and ways to increase productivity. These meetings lasted up to three (3) hours. It is my

DocuSign Envelope ID: 92AADA23-9CD9-4046-B7F9-62E8630E312A

understanding that I was not paid for attending these meetings in any of the states.

11. In each state that I worked, J&L typically assigned me a number of jobs per day. J&L limited the allotment of time for each job even though some jobs took longer than the allotted time, and one job could take an entire day to complete. Some days, even though J&L assigned me a full workload, J&L would force me to help other Technicians. J&L did not count my time helping other Technicians toward my jobs assigned per day, nor was I paid for this work.

12. As in Florida, in Massachusetts, Maine, and Connecticut, jobs were added and taken away from me during the course of the day. On many occasions I would accept a job and travel to the customer's home only to find that the job had been deleted. As in Florida, my supervisor, Brendon, the supervisor for Massachusetts, Maine and Connecticut would say to me that he would email Comcast to get the job back and for me to standby. I would wait thirty (30) minutes and call him again. Brendon would say to wait a little longer and I would continue to wait. I would call back again to find out the job never came back. This would happen three (3) times a week. Similarly, J&L would regularly take jobs away from me when I was in the middle of a job or had not yet closed out my job. It was my understanding that I was not paid for the time spent on these deleted jobs regardless of whether I was working in Florida, Massachusetts, Maine, or Connecticut.

13. After I completed a job, I would drive to the next job. The drive time between jobs often took between twenty minutes and two (2) hours, depending on the state. The drive time between jobs in Florida often took between twenty (20) and thirty (30) minutes, while the drive time in Massachusetts took between one (1) and two (2) hours. On a daily basis I would drive from one state to another. For example, I would drive from the hotel in Connecticut to

3

Springfield, Massachusetts both in the morning and at the end of the day. I did this six (6) days a week. J&L, however, made me underreport my drive time when I worked in Florida, Massachusetts, Maine, and Connecticut.

14. As in Florida, in Massachusetts, Maine, and Connecticut, I was also required to assist other Technicians with their jobs throughout the day. Only the Technician that was originally assigned the job was paid for the job completed. It was my understanding I was not paid for my time spent assisting other Technicians in any of these states.

15. My day usually ended between 7:00 p.m. and 8:00 p.m. There were many days I finished at 10:00 p.m. In each state, after I finished my last job, I drove directly home or to the hotel. I did not return to the warehouse until the next morning of work.

16. In total, I worked six (6) days per week, between twelve (12) hours and fourteen (14) hours per day, and between seventy-two (72) and eighty-four (84) hours per week when working in Florida, Massachusetts, Maine, and Connecticut.

## **MEAL AND REST BREAKS IN MASSACHUSETTS, MAINE, AND CONNECTICUT**

17. The number of jobs assigned in a given day, the amount of time jobs typically took to complete, and the pressure placed upon me by supervisors to complete all daily assignments made it nearly impossible to take meal and rest breaks when I worked in Massachusetts, Maine, and Connecticut. J&L did not make rest breaks available to me, and generally, my work schedule was too busy to take a rest break in any of these states.

18. I was typically not provided with a meal period, during which I was relieved of all duties while working in Florida, Massachusetts, Maine, or Connecticut. I was directed by my supervisors in each of these states to work through my meal periods. Any time I took to eat would typically take place while I was driving from one job to another, and even then, I was

required to have my cellular telephone on me at all times and be available to respond to any work calls. J&L required me to enter that I took a meal break, no matter which state I worked in, when in fact I typically ate in my truck while driving to the next job. If I did not enter that I took a meal break, J&L's billing department would enter the meal break for me.

### COMPENSATION IN MASSACHUSETTS, MAINE AND CONNECTICUT

19. The wage statements I received from J&L regardless of which state I worked in were similar. Based on these wage statements, it was not clear to me how J&L computed my wages earned from work in Florida, Massachusetts, Maine, or Connecticut. Despite being told that I was compensated on a piece rate basis for work done in each of these states, my wage statements reflected that I was instead paid on an hourly basis for work performed in each state, and did not indicate any piece rates.

20. J&L's billing procedures were similar in Florida, Massachusetts, Maine, and Connecticut. While working for J&L in each of these states, I entered the various jobs I performed. I was also required to keep track of my hours, and submitted my hours to J&L in each of these states. Though my wage statements made it impossible to know exactly how J&L determined my wages, I believe my compensation was based on a piece rate and hourly basis in each of these states.

21. While J&L made it impossible for me to know exactly how they computed my wages, I know that J&L did not pay all the wages I earned in a variety of ways in Florida, Massachusetts, Maine, and Connecticut. For example, J&L would regularly delete jobs I had completed, or change the jobs I completed to a lower paying job in each state. J&L eliminated my jobs on every pay check. For example, if I installed seven (7) cable boxes, I was paid for installing one (1) cable box and I was paid $33 for the whole installation. I would complain and

J&L would say there is nothing we can do to change it. During my time in each state J&L would also instruct me not to enter a job at all, even though I completed the corresponding job. I was also told not to enter any piece rate task when assisting other Technicians with jobs.

22. J&L would also instruct me to underreport my time worked in Florida, Massachusetts, Maine, and Connecticut. For each state, J&L typically required me to enter that my start time began after I actually started working. J&L also typically required me to enter for each state that I stopped working several hours before I actually stopped working. If I did not underreport my time as instructed, J&L regularly would manipulate my time to reduce my total work time in each state. In each state, technician supervisors and managers alike, instructed me to reduce my true hours worked in order to show higher production and increase my hourly rate. My supervisor in Massachusetts, Maine and Connecticut, Brendon, and my manager, Brian Smith, the operations manager in Massachusetts, Maine, and Connecticut, like my supervisors and managers in Florida, instructed me to reduce my hours by clocking out before I finished my job. I told my supervisor Brendon, that I was not making money. I said to him, "Why does my pay check show fourty-two (42) hours, there are only two (2) hours of overtime, I worked over eighty (80) hours this week." Brendon said, "You need to show less hours in order to make more money. It doesn't matter how many hours you work, you get paid by the job."

23. Based on my interactions and conversations with other Technicians, J&L regularly deleted or changed piece rates for completed jobs and regularly manipulated my time entries for work performed in Florida, Massachusetts, Maine, and Connecticut. I was instructed to underreport my time in each of these states, and based on my conversations with my co-workers, it is my understanding that other field technicians were also not paid the accurate overtime wages.

24. In order to do my job, I had to purchase various tools and equipment, such as a wireless drill, drill bits, pliers, screwdriver, staple gun, nails, splitters, strippers, safety vest, wrench, crimper, safety glasses, many types of cables, gasoline for trucks, cable caddy, ladder belt, boots, and pants. These tools were similar in each state that I worked in. Because J&L did not provide proper tools and equipment, I was forced to sign the "J&L Loan Agreement." This agreement stated that J&L was to loan me the funds in order to finance the purchase of tools I needed to complete jobs assigned to me by J&L. My paystubs reflected deductions for the tools and equipment necessary to purchase in order to complete the jobs.

25. J&L made further deductions from my pay. If a customer called back with the same service issue, or something was not working properly, replacement parts were deducted from my pay. I understand that lost equipment was also deducted from my pay.

26. J&L also failed to provide accurate wage statements in each state that I worked. My pay stubs showed several regular and overtime rates, without ever explaining which rates applied to a given job, day's or even week's work. My pay stubs did not reflect my piece-rate activity. I believe the wage statements were inaccurate as they did not include all the hours I worked, did not include compensation for missed meal and rest periods, and did not include all of my piece rates in each state.

I declare under the laws of the State of Florida that the foregoing is true and correct and based upon my own personal knowledge.

Executed on this 23rd day of September, 2019.

                                                                                                    DocuSigned by:

                                                         Markenson Morinvil