**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| Robenson Jean-Pierre, Jean Metelus, Bill McKee and Michael Gary Fauntleroy, on behalf of themselves and all others similarly situated, |
| Plaintiffs |
| v. |
| J&L CABLE TV SERVICES, INC., |
| Defendant. |

Docket No. 1:18-cv-11499-MLW

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

III.  TERMS OF THE SETTLEMENT AGREEMENT ...................................................... 4

    A.  Definitions of the Proposed Settlement Classes and Collective ............................ 4

    B.  Distribution of the Gross Settlement Amount and Plan of Allocation ................. 5

    C.  Scope of Release ......................................................................................... 7

    D.  Notice to Potential Settlement Class Members ....................................... 8

IV.  DISCUSSION ................................................................................................. 9

    A.  The Settlement Satisfies the Requirements for Preliminary Approval Under the FLSA and Fed. R. Civ. P. 23 .......................................................... 9

        1.  Legal Standard for Approval of FLSA Settlements ................................... 9

        2.  Legal Standard for Preliminary Approval of Rule 23 Class Action Settlements ............................................................................... 10

    B.  The Proposed Settlement is a Fair, Reasonable, and Adequate Resolution of a *Bona Fide* Dispute ........................................................................... 11

        1.  The Settlement Resolves a *Bona Fide* Dispute ....................................... 11

        2.  Plaintiffs And Class Counsel Have More Than Adequately Represented The Interests Of The Class .............................................................. 12

        3.  The Proposed Settlement Was Negotiated At Arms-Length And The Proponents Of The Settlement Are Highly Experienced In Similar Litigation ................................................................................. 13

        4.  The Relief Obtained For The Class Is Adequate Measured Against The Risk Of Continued Litigation .............................................................. 14

        5.  The Proposed Settlement Treats Class Members Equitably To Each Other ....................................................................................... 17

    C.  The Court Should Preliminarily Certify the State Law Settlement Classes under Rule 23(a) and (b)(3) .......................................................................... 18

        1.  Numerosity ............................................................................... 18

2. Commonality ................................................................... 19

3. Typicality ........................................................................ 19

4. Adequacy ........................................................................ 20

5. Predominance .................................................................. 21

6. Superiority ....................................................................... 22

D. Collective Certification Under 29 U.S.C. § 216(b) is Appropriate .................... 22

E. The Service Awards to Named Plaintiffs are Justified and Should be Approved 23

F. The Proposed Method of Class Notice Should be Approved ............................. 25

G. The Requested Attorneys' Fees and Costs are Fair, Reasonable, and Supported by Applicable Precedent ............................................................................. 26

H. The Proposed Implementation Schedule ......................................................... 27

V. CONCLUSION .................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................................. 23, 24

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).................................................................................................. 19

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)..................................................................................... 22

*Balderas v. Massage Envy Franchising*, LLP
    Case No. 12–cv–06327 NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014)............................ 17

*Besic v. Byline Bank, Inc.*,
    No. 15-C-8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015) ................................. 19

*Company v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................. 28

*D.A. Schulte, Inc., v. Gangi*,
    328 U.S. 108 (1946).................................................................................................. 9

*Dillworth v. Case Farms Processing, Inc*,
    No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio, Mar. 8, 2010)............................. 17

*Durett v. Housing Auth. of Providence*,
    896 F. 2d 600 (1st Cir. 1990)................................................................................... 11

*E.E.O.C. v. Astra U.S.A., Inc.*,
    94 F. 3d 738 (1st Cir. 1996)..................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).................................................................................................. 27

*Entin v. Barg*,
    412 F.Supp. 508 (E.D. Pa. 1976) ............................................................................ 17

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................ 25

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
    98 F. Supp. 3d 277 (D. Mass. 2015) ....................................................................... 21

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)..................................................................................... 21

*Holmes v. Continental Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) ........................................................................ 18

*In Re Armored Car Antitrust Litig.*,
    472 F.Supp. 1357 (N.D. Ga.1979) .................................................................... 17

*In re AT & T*,
    789 F.Supp.2d 935 (N.D. Ill. 2011) ................................................................. 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) .......................................................................... 27

*In Re Four Seasons Secs. Laws Litig.*,
    58 F.R.D. 19 (W.D. Okla.1972) ........................................................................ 17

*In re Lupron Marketing & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ............................................................. 12

*In re Lupron Mktg. & Sales Practices, Litig.*,
    228 F.R.D. 75 (D. Mass 2005) ......................................................................... 11

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ......................................................................... 12

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ............................................................ 20, 23, 25

*In Re Sunrise Secs. Litig.*,
    131 F.R.D. 450 (E.D. Pa. 1990) ...................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ........................................................................ 17

*Johnson v. VCG Holding Corp.*,
    802 F. Supp. 2d 227 (D. Me. 2011) ................................................................. 24

*Lapan v. Dick's Sporting Goods, Inc.*,
    No. 1:13-cv-11390-R, 2015 WL 8664204 ....................................................... 27

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *2 (D. Mass. June 8, 2017) .......... 10

*Lynn's Food Stores, Inc. v. United States*,
    679 F. 2d 1350 (11th Cir. 1982) ................................................................... 9, 10

*Ma v. Covidien Holding, Inc.*,
    No. SACV 12–02161–DOC, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............. 17

*Michaud v. Monro Muffler Brake, Inc.,*
  2:12-cv-00353-NT, 2015 WL 1206490 (D. Me., Mar. 17, 2015)....................................*passim*

*Miller v. Carrington Mortgage Serves.* LLC,
  No. 2:19-cv-00016-JDL, 2020 WL 2898837 (D. Me. June 3, 2020) ...................................... 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)........................................................................................................ 26

*National Association of Deaf v. Mass. Institute of Technology*,
  No. 3:15-cv-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ......................... 14, 15

*Nat'l Assoc. of Chain Drug Stores v. New England Carpenters*,
  582 F. 3d 30 (1st Cir. 2009)............................................................................................. 16

*Nilsen v. York County*,
  382 F. Supp. 2d 206 (D. Me. 2005) .................................................................................. 26

*Overka v. American Airlines*,
  265 F.R.D. 14 (D. Mass. 2010)......................................................................................... 20

*Parks v. Portnoff Law Associates*,
  243 F. Supp. 2d 244 (E.D. Pa. 2003) ............................................................................... 27

*Poreda v. Boise Cascade, LLC*,
  532 F. Supp. 2d 234 (D. Mass. 2008) .......................................................................... 24, 25

*Reynolds v. Fidelity Investments Instit. Operations Co., Inc.*,
  No. 1:18-cv-423, 2020 WL 91874 (M.D.N.C. Jan. 7, 2020)................................................. 18

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012)........................................................................................ 20

*Rodriguez v. West Publ'g Corp.*,
  No. CV05–3222 R(MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ............................. 17

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000)....................................................................................... 12, 15

*Scovil v. FedEx Ground Package Sys., Inc.*,
  No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014).................... 10, 18, 25, 26

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548(RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................. 25

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
  323 F.3d 32 (1st Cir. 2003).............................................................................................. 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
　No. 13-cv-02540-HSG , 2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................. 17

*Viceral v. Mistras Grp., Inc.*,
　No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................................... 17

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
　208 F.3d  (1st Cir. 2000) .................................................................................................. 22

*West Virginia v. Chas. Pfizer & Co.*,
　314 F. Supp. 710 (S.D.N.Y. 1970) ..................................................................................... 17

 **Statutes**

29 U.S.C. § 201 ...................................................................................................................... 1

29 U.S.C.A. § 207(i) ............................................................................................................... 3

29 U.S.C.§ 216(b) ...................................................................................................... 2, 13, 24

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

**Other Authorities**

*Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
　53 UCLA L. Rev. 1303 (2006) ........................................................................................... 25

## I.    INTRODUCTION

This class and collective action ("Action") brought by Plaintiffs Robenson Jean-Pierre, Jean Metelus, Bill McKee, and Michael Gary Fauntleroy ("Plaintiffs" or "Named Plaintiffs") on behalf of current and former non-exempt hourly employees who install cable television, phone, and internet services ("Technicians") for Defendant J&L Cable TV Services, Inc. ("J&L" or "Defendant") has been resolved. The Action is based on J&L' s alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and Massachusetts, Maine, New Hampshire, and Pennsylvania employment laws during the relevant time period.

After almost two years of hard-fought litigation—including conditional certification of the collective, dissemination of notice to prospective collective members, extensive document and written discovery, and intensive mediation and arms' length negotiations with the assistance of a respected wage and hour mediator—the Parties have reached a settlement of this Action, memorialized in the proposed Class Action Settlement Agreement ("Settlement"). Plaintiffs now seek preliminary approval of the Settlement as to the state law Classes and approval of the Settlement as to the Collective.[1]

The Parties have resolved the claims of approximately 545 Settlement Class and Collective Members for a total non-reversionary settlement, which provides for the payment of $1,850,000 (the "Gross Settlement Amount"). The proposed settlement provides substantial benefit to the members of the Class and Collective, and is an efficient outcome in the face of risky and expanding litigation. The Settlement is fair, reasonable, and adequate in all respects, and is a fair and reasonable resolution of a *bona fide* dispute, and Plaintiffs respectfully request that the Court grant

---

[1] The Settlement Agreement ("Settlement") is attached as Exhibit 1 to the accompanying Motion for Preliminary Approval of Class and Collective Action Settlement. This pleading utilizes the terms as defined in the Settlement.

the requested preliminary approval and enter the accompanying attached proposed Order. Defendant does not oppose this Motion.

## II.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

J&L is a multi-state contractor providing cable and equipment installations on behalf of cable operators—including Comcast—throughout the Northeast Region and Florida. Plaintiffs allege that J&L Technicians experience wage and hour violations under the FLSA and labor laws of Massachusetts, Maine, New Hampshire, and Pennsylvania ("State Employment Laws"). Throughout the relevant time period, Plaintiffs allege that J&L eschewed its obligations by failing to pay proper minimum wages, overtime wages, and completed piece rates to Class and Collective Members and forcing them to incur work-related expenses, by improperly deducting these work-related expenses from earned wages as loan re-payments. *See* ECF No. 91 at ¶¶ 19, 21, 30, 48-49; Settlement, ¶1.1.

On December 6, 2018, Plaintiffs filed a Motion for Conditional Certification and to Facilitate Notice Under 29 U.S.C.§ 216(b) (ECF No. 26), which J&L opposed. ECF No. 51. On October 7, 2019, the Court granted Plaintiffs' Motion and conditionally certified the case as a collective action and allowing dissemination of Notice (ECF No. 59), after which Notice was sent to over 600 J&L Technicians who performed work in numerous states, including Florida, Pennsylvania, Massachusetts, New Hampshire, and Maine. As a result of the FLSA notice process, a total of 218 Technicians filed consents to opt-in to the Action ("Opt-In Plaintiffs"), including Named Plaintiffs, to date. *See* ECF No. 98.

Following the conclusion of the Opt-In period, the Parties met and conferred to discuss attempts to settle the Action. Declaration of Sarah Schalman-Bergen ("Schalman-Bergen Decl."), ¶10. The Court stayed all deadlines and granted Plaintiffs leave to file a First Amended Collective

2

and Class Action Complaint ("FAC"). ECF No. 85. The FAC, filed on February 28, 2020, added Bill McKee as a named Plaintiff asserting Rule 23 state wage law claims on behalf of Maine and New Hampshire Classes and Michael Gary Fauntleroy as a named Plaintiff asserting Rule 23 state wage law claims on behalf of a Pennsylvania Class, based on the same allegedly improper compensation practices by J&L. ECF No. 91.[2] Defendant filed its answer to the FAC on March 19, 2020. ECF No. 93.

Class Counsel analyzed and evaluated the merits of the claims made against J&L in this action, conducted interview with Plaintiffs and the Opt-In Plaintiffs, obtained and reviewed documents that J&L had produced during the course of discovery relating to J&L's compensation policies and practices, and analyzed payroll data. Schalman-Bergen Decl., ¶11; Settlement, ¶1.4. On May 5, 2020, the Parties participated in a full-day remote mediation session with respected and experienced wage and hour mediator Mark Irvings. Schalman-Bergen Decl., ¶11; Settlement, ¶1.5. Prior to the mediation, Plaintiffs prepared a detailed mediation statement, and performed calculations of potential damages based on extensive pay data provided by Defendant. Schalman-Bergen Decl., ¶ 11.

The Parties were unable to reach an agreement following the May 5 mediation, and the litigation then proceeded in the normal course. On May 22, 2020, Defendant filed a motion to amend its answer to Plaintiffs' FAC to include a defense that the technicians were exempt from overtime under the FLSA pursuant to the retail exemption set out in 29 U.S.C.A. § 207(i), and exempt from overtime under Pennsylvania and New Hampshire wage laws pursuant to comparable exemptions under those states' laws (ECF No. 100) which Plaintiffs opposed (ECF. No. 104). Following a hearing, the Court denied Defendant's motion to amend. ECF No. 105. On June 24, 2020, Defendant filed

---

[2] The four named Plaintiffs in this care are also referred to in this Motion as "Proposed Class Representatives" because they seek to represent the proposed State Law classes and the proposed FLSA collective.

Objections to the Magistrate's Order denying its motion to amend, arguing in part, that the amendments were not futile as Defendant's payment of overtime to the Plaintiffs did not preclude Defendant from raising statutory exemptions as a defense. ECF No. 107. Plaintiffs filed their Opposition to Defendant's Objections on July 8, 2020. ECF No. 109. The Parties continued to actively conduct pre-trial discovery.

From the time of the initial mediation session of May 5, 2020, the Parties continued arms'-length negotiations. *Id.*, ¶12. The Parties eventually reached an accord with Mr. Irvings' assistance, which has resulted in this Settlement Agreement. *Id.*

## III.   TERMS OF THE SETTLEMENT AGREEMENT

### A.   Definitions of the Proposed Settlement Classes and Collective

Pursuant to the Settlement, an individual is a member of a "State Law Settlement Class" or "State Law Class" if he or she belongs to any of the following:

- The "Massachusetts State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Massachusetts between July 18, 2015 and August 28, 2020.

- The "New Hampshire State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in New Hampshire between July 18, 2015 and August 28, 2020.

- The "Maine State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Maine between July 18, 2012 and August 28, 2020.

- The "Pennsylvania State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Pennsylvania between July 18, 2015 and August 28, 2020.

Pursuant to the Settlement, the following individuals are members of the "Settlement Collective":

All current and former Technicians who were employed by J&L Cable TV Services, Inc. between July 18, 2015 and August 28, 2020 who have opted in to *Robenson Jean-Pierre, Jean Metelus, Bill McKee and Michael Gary Fauntleroy, individually and on behalf of all*

*similarly situated individuals v. J&L Cable TV Services, Inc.,* Civil Action No. 1:18-cv-11499, currently pending in the United States District Court for the District of Massachusetts ("Settlement Collective Members").

The Members of the State Law Classes are referred to as "State Law Class Members," and along with the Collective Members are referred to as "Settlement Class and Collective Members." There are approximately 545 Settlement Class and Collective Members.

### B. Distribution of the Gross Settlement Amount and Plan of Allocation

J&L has agreed to pay an all-in non-reversionary Gross Settlement Amount of $1,850,000, The $1,850,000 Gross Settlement Amount includes (subject to Court approval) amounts to cover Class Counsel's attorneys' fees not to exceed one-third of the Gross Settlement Amount (*i.e.,* $616,667.00) and reimbursement of out-of-pocket costs not to exceed $50,000,[3] service awards not to exceed $10,000 to each of the four Named Plaintiffs, and the costs of Settlement Administration. Settlement, ¶2.1. Subject to Court approval, J&L will electronically transfer the Gross Settlement Amount into a Qualified Settlement Fund ("QSF") to be set up and administered by the Settlement Administrator, the first payment of $168,181.80 to be paid within fifteen (15) business days after the Court's Order granting preliminary approval of the Settlement. Subsequent payments shall be paid in ten equal installments of $168,181.82, and shall be paid on the first calendar day of every month thereafter, although nothing in the Settlement Agreement shall preclude Defendant from paying the entire amount earlier than scheduled. Settlement, ¶2.2. The QSF will be administered by Angeion, an independent and highly respected third-party claims administration company, subject to appointment by the Court pursuant to this Motion.

After deducting the requested amounts of attorneys' fees and costs, service awards, and

---

[3] Class Counsel will file a Motion for Approval of Attorneys' Fees and Costs and Plaintiffs' Service Awards and for Final Approval of the Settlement prior to the Court's final fairness hearing.

settlement administration costs, the entire remaining amount - the "Net Settlement Amount" - will be distributed to all Settlement Class and Collective Members (with the exception of those who exclude themselves from the Settlement) who will all receive a settlement award check without the need to submit a claim form. *Id.,* ¶ 2.3. Each Settlement Class and Collective Member will receive a minimum payment of $50.00. *Id.,* ¶ 2.3(a). In addition to the minimum payment, each Settlement Class and Collective Member will receive a *pro rata* portion of the Net Settlement Amount under an allocation formula based on the total number of workweeks (settlement shares) that the respective Class and Collective Member worked for J&L during the applicable limitations period. Workweeks during which work was performed in Massachusetts and Maine will be credited with additional settlement shares to recognize the increased value of those state law claims. *Id.,* ¶ 2.3(b)(i). The total number of settlement shares will be added together, and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. The figure will then be multiplied by each Class Member's number of settlement shares to determine the Class Member's Settlement Award. *Id.,* ¶ 2.3(b)(ii).

All Settlement Award determinations shall be based on Defendant's records provided to the Settlement Administrator and the Settlement Notice to be sent to Class Members will include the number of workweeks credited for each Class and Collective Member, including the number of workweeks in Massachusetts and Maine. *Id.,* ¶¶2.3(iii), 3.3. Settlement Class and Collective Members will be able to dispute their workweeks by submitting convincing evidence proving they worked more workweeks than shown by J&L Cable records. *Id.*

Under the schedule set forth in the Settlement Agreement, Settlement Awards for each Settlement Class and Collective Member will be mailed to them after the later of the Court's Final Approval or the full funding of the Gross Settlement Amount into the QSF. *Id.* ¶2.3(d). If *less* than

6

$50,000 remain after the 180-day check-cashing period, the remaining amount will be distributed to the Parties' agreed-upon *cy pres* recipient Greater Boston Legal Services,[4] (subject to this Court's approval). If the residual amount is *$50,000 or more*, a second distribution will be made on a *pro rata* basis to those Settlement Class and Collective Members who have cashed their checks. *Id.* If there are any funds remaining after redistribution, and after deducting related additional settlement administration costs, the remaining amount shall revert to the *cy pres* recipient. No funds will revert to J&L Cable. *Id.,* ¶2.3(d).

## C.   Scope of Release

After the entirety of the Gross Settlement Amount has been paid by J&L into the QSF, the Settlement Agreement provides separate Releases for the respective claims of the Settlement Collective and the State Law Settlement Classes, each Release appropriately limited to claims that were asserted under the FLSA and/or Massachusetts, Maine, New Hampshire, and/or Pennsylvania law, based on the facts alleged in the operative FAC. *Id.*, ¶ 4.1-4.2. In addition, Settlement Class Members who are not Settlement Collective Members and who cash, deposit, or otherwise negotiate their Settlement Award checks shall also release any and all claims against the Releasees under the FLSA based on the same factual predicates. *Id*., ¶ 4.3. Named Plaintiffs agree to a broader "general release" in exchange for the additional consideration of their service awards. *Id.,* ¶ 4.4.

---

[4] The Parties' agreed-upon *cy pres* recipient, Greater Boston Legal Services ("GBLS") provides free legal assistance for low-income individuals and families to help them secure or preserve basic critical necessities of life – shelter, food, protection against violence, and subsistence income. GBLS focuses on women, families and elder people who live in poverty and who are victims of domestic violence and consumer fraud, families facing destitution in need of subsistence benefits, low income renters facing possible homelessness, elders and individuals with disabilities in need of critical income and medical benefits, low-wage workers denied their earned wages and benefits, and immigrants fleeing torture and persecution needing protection.  Every year GBLS helps more than 10,000 low income families and individuals solve their civil (non-criminal) problems. The Court should approve GBLS as a worthy and appropriate recipient of *cy pres* funds in this case. *See* https://www.gbls.org/what-we-do.

Finally, each settlement check will contain an endorsement on the back of the check to satisfy any applicable procedural protocols under the FLSA, as appropriate for Named Plaintiffs and Collective Members and other Settlement Class Members. *Id.*, ¶ 4.5.

### D.     Notice to Potential Settlement Class Members

Within twenty-one (21) days after the Court's Preliminary Approval Order, the Settlement Administrator will mail and email (if email address is available) the Notice to all Technician Class Members, Settlement Collective Members, and Named Plaintiffs. *Id.*, ¶6.1. In order to provide the best notice practicable, the Settlement Administrator will make reasonable efforts to identify current addresses via public and proprietary systems and will provide to Defense Counsel and Class Counsel regular updated reports indicating steps taken by the Settlement Administrator to located address information, to resend Notices, as well as lists of names and addresses of Settlement Class and Collective Members who object to, or request exclusion from the Settlement, or who dispute the payment calculations. In addition, the Settlement Administrator will create a website for the Settlement (previewed by Class Counsel and Defendant's Counsel) and a toll-free call center to field inquiries from Settlement Class and Collective Members during the Notice and Settlement Administration periods. *See id.*, ¶ 3.1(a)-(o) (duties of the Settlement Administrator).

Settlement Class Members will have a period of 60 days from the time the Notice is initially mailed to object to or opt-out of the Settlement (the "Notice Deadline"), and, among other provisions (discussed further below), the Settlement Notice will clearly explain the objection and exclusion options and procedures, and the deadlines for doing so. *See* Settlement Agreement, Exhibit A ("Settlement Notice"). *Id.*, ¶6.2-6.6.

## IV.    DISCUSSION

### A.    The Settlement Satisfies the Requirements for Preliminary Approval Under the FLSA and Fed. R. Civ. P. 23

#### 1.    Legal Standard for Approval of FLSA Settlements

Settlements are favored in law, including those resolving wage claims under the FLSA. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 116 (1946). A court may approve an FLSA settlement if it is "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Michaud v. Monro Muffler Brake, Inc*., 2:12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me., Mar. 17, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982); *see Lauture v. A.C. Moore Arts & Crafts, Inc.,* No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *2 (D. Mass. June 8, 2017). A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as…. back wages, that are actually in dispute." *Lynn's Food*, 679 F. 2d at 1354.

Further, in assessing the fairness of an FLSA settlement, **"**the factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims." *Michaud*, 1206490, at *9 (citing *Scovil v. FedEx Ground Package Sys., Inc.,* No. 1:10-CV-515-DBH*,* 2014 WL 1057079, at *8 (D. Me. Mar. 14, 2014). Here, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute and, as discussed below, the requirements for approval of the Settlement under Rule 23 are met. The Court should therefore approve the Settlement as to both the Class and Collective.

2.     **Legal Standard for Preliminary Approval of Rule 23 Class Action Settlements**

Courts in this Circuit recognize the "clear policy in favor of encouraging settlements." *Durett v. Housing Auth. of Providence*, 896 F. 2d 600, 604 (1st Cir. 1990); *E.E.O.C. v. Astra U.S.A., Inc*., 94 F. 3d 738, 744 (1st Cir. 1996). Further, it is well established that "the law favors class action settlements." *In re Lupron Mktg. & Sales Practices, Litig*., 228 F.R.D. 75, 88 (D. Mass 2005) (citation omitted)). The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). "Court approval of a class action settlement involves a two-step process" by which the Court must first determine whether the parties' proposed settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *Miller v. Carrington Mortgage Serves*. LLC, 2:19-cv-00016-JDL, 2020 WL 2898837, at *4 (D. Me. June 3, 2020) (citing Fed. R. Civ. P. 23(e) (1)(B), (2)).

Under Rule 23(e), where a class settlement is "proposed," the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)(ii) (emphasis added). *Miller*, 2020 WL 2898837, at *4 (at preliminary approval stage, the court considers whether it "will be likely able to" approve the settlement). "At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness, and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (collecting cases). As discussed below, the standard is satisfied here.

10

In order to determine whether the settlement is "fair, reasonable, and adequate," a court must look to Rule 23(e)(2)'s approval factors, which examine whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). There is a "presumption that the settlement is within the range of reasonableness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Marketing & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). Ultimately, courts in this Circuit instruct that "[t]he fairness determination is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the *central question of whether the settlement is reasonable in light of the uncertainty of litigation." Rolland v. Cellucci,* 191 F.R.D. 3, 8 (D. Mass. 2000) (citation omitted) (emphasis added).

    **B.**    **The Proposed Settlement is a Fair, Reasonable, and Adequate Resolution of a *Bona Fide* Dispute**

        **1.**    **The Settlement Resolves a *Bona Fide* Dispute**

In this case, the wages and other FLSA issues that were the subject of a *bona fide* dispute in this litigation and that would have impacted the case moving forward, include, but are not

limited to: (1) the amount of time Technicians spent performing their work, and whether Technicians were pressured to underreport the amount of time worked, and whether all hours worked were reported/captured by J&L Cable's timekeeping system(s); (2) whether Technicians were paid for all hours worked, including overtime; (3) whether the Technicians were required to incur unreimbursed expenses that reduced their overtime wages, and whether the wages were improperly deducted from their pay; (4) whether Plaintiffs would be able to prove that J&L Cable's pay system violated the FLSA and, if so, whether J&L Cable would be able to meet its burden of demonstrating the alleged unlawful pay system was made in good faith with reasonable grounds for its belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that Defendant could avoid imposition of liquidated damages; (5) whether Plaintiffs could maintain a collective action; and (6) whether Plaintiff and/or J&L Cable would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Ultimately the Settlement represents a compromised resolution of these issues, as well as others, that take into account the risks that members of the proposed Collective would face if the case proceeded to trial. Schalman-Bergen Decl., ¶¶15-16; Declaration of Carolyn Hunt Cottrell ("Cottrell Decl."), ¶¶21-22. The Settlement provides certain and substantial payments for the Technicians who are members of the Settlement Class and Collective in this case.

## 2.   Plaintiffs And Class Counsel Have More Than Adequately Represented The Interests Of The Class

"The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *National Association of Deaf v. Mass. Institute of Technology*, No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020) (citation omitted). In the course of this pursuing this litigation for over a year, Plaintiffs' Counsel conducted intensive factual and legal investigation of their claims; prepared formal

written discovery and responses, including those applicable to the named Plaintiffs and over 30 individual Opt-In Plaintiffs; conducted in-depth interviews of dozens of putative Class members and Opt-In Plaintiffs; analyzed state and federal law applicable to their claims; reviewed thousands of pages of documents produced by Defendants; and exhaustively negotiated this Settlement for months following mediation. Schalman-Bergen Decl., ¶13. The four Named Plaintiffs have provided invaluable assistance throughout the prosecution of this action, filing the claims in the FAC on behalf of themselves and other similarly situated Technicians, and demonstrating willingness to serve as active class representatives on behalf of the state classes and the FLSA. *Id.,* ¶19. There are no conflicts among the named Plaintiffs and other members of the settlement classes. *Nat'l Assoc. of Deaf,* 2020 WL 1495903, at *3 (first factor met where plaintiffs retained qualified and highly skilled attorneys with a demonstrated record of success in similar cases, plaintiffs' counsel engaged in extensive discovery and analysis of the information received from defendant and negotiated long and hard seeking best outcome for their clients).

> ### 3.   The Proposed Settlement Was Negotiated At Arms-Length And The Proponents Of The Settlement Are Highly Experienced In Similar Litigation

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Assoc. Deaf*, 2020 WL 1495903, at *4 (citation omitted). Here**,** the Gross Settlement Amount is a negotiated amount that resulted from mediation and subsequent arms'-length negotiations with the assistance of private mediator Mark Irvings, an experienced wage and hour mediator. Schalman-Bergen Decl., ¶13. Prior to the May 5, 2020 mediation, Defendant produced payroll data which Plaintiffs' Counsel reviewed and analyzed extensively. *Id.* Further, the Parties had already conducted substantial discovery, including Defendant's production of over 15,000 pages of documents and extensive factual and

legal research in connection with Plaintiffs' motion for certification of the collective and facilitation of notice to potential collective members which resulted in responses of hundreds of Opt-Ins. *Id.* Thus, at the time Settlement was negotiated, the Parties had a well-informed basis to evaluate the merits of the claims and defenses in the action. *See id. See also* Settlement, ¶1.4

Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully in this Circuit and district courts throughout the United States. *See* Schalman-Bergen Decl., ¶17; Cottrell Decl., ¶¶4-5, 21. Settlements in wage and hour class actions brought by Plaintiffs' Counsel have been approved in dozens of cases, including a recent settlement on behalf of cable technicians which contained terms similar to the proposed settlement in this case, such as a similar method for notifying class members and for distributing the settlement fund among class members. *See* Schalman-Bergen Decl. ¶17; Cottrell Decl., ¶5.[5] *See, e.g., Rolland*, 191 F.R.D. at 6 ("strong initial presumption" of fairness" where "the settlement was reached after arms'-length negotiations, that the proponents' attorneys have experience in similar cases," and "there has been sufficient discovery to enable counsel to act intelligently…").

### 4.    The Relief Obtained For The Class Is Adequate Measured Against The Risk Of Continued Litigation

In determining the reasonableness of the settlement, "usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Assoc. of Chain Drug Stores v. New England Carpenters*, 582 F. 3d

---

[5] *See, e.g., Soto et al. v. O.C. Communications, et al.,* No. 17-cv-00251 (N.D. Cal. Oct. 23, 2019) Order (ECF 305) (granting final approval of settlement in wage and hour dispute involving cable technicians and certifying California and Washington state law classes for purpose of settlement).

30, 44 (1st Cir. 2009). Here, the relief offered by the settlement is more than adequate. The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and investigation and analysis by Plaintiffs' Counsel. Schalman-Bergen Decl., ¶13. Class Counsel based their damages analysis and settlement negotiations on formal and informal discovery, including payroll data produced by J&L and interviews with Class Members and Opt-In Plaintiffs. *Id*.

Based on their estimates, the negotiated non-reversionary Gross Settlement Amount of $1,850,000 represents approximately the total unpaid wages that would have resulted if Plaintiffs could demonstrate that they worked off the clock approximately 30 minutes each day during the entire time period. *Id.* ¶14. These figures are based on Plaintiffs' assessment of a best-case scenario. *Id.* To have obtained such a result at trial, Plaintiffs would also have had to succeed in obtaining certification of the Class. *Id.* The average settlement award to Settlement Class and Collective Members is approximately $2,024 (dividing the net recovery by total number of Settlement Class and Collective members). *Id.*

The final negotiated settlement amount takes into account the substantial risks inherent in any class action wage and hour case. *Id.* ¶15. While Plaintiffs believe their case is very strong, J&L denies the allegations and denies it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted (Settlement ¶ 1.3) and has raised defenses to each of the disputed legal and factual issues described in Section IV(A)(1) above. Further, although the Court has conditionally certified the collective, there was a risk that Plaintiffs would not succeed in maintaining a collective or class through trial.

In addition, a trial on the merits would involve significant risks for Plaintiffs as to both liability and the appropriate rate and calculation of damages, and any verdict at trial could be

delayed based on appeals by Defendant. Thus, as in any complex action, the Plaintiffs generally face uncertainties. *See, e.g., West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[I]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

Measured against these risks and delays, the Settlement will result in immediate and certain payment to Settlement Class and Collective Members. Courts routinely approve settlements that provide a fraction of the maximum potential recovery in this case.[6] *See also Soto et al v. O.C. Communications, et al*., No. 17-cv-00251 (N.D. Cal. Oct. 23, 2019) (ECF No. 305) (approving settlement on behalf of cable installers where the Gross Settlement amount represented approximately 17.2% of defendant's total potential exposure, or approximately 86% of unpaid wages). This is an excellent recovery in the face of expanding and uncertain litigation and is fair, reasonable, and adequate. *See Scovil*, 2014 WL 1057079, at *5 (approving settlement as fair, reasonable, and adequate, because while "clearly a compromise that discounts to some degree

---

[6] *See, e.g., Dillworth v. Case Farms Processing, Inc*, No, 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio, Mar. 8, 2010) (recovery of 1/3 of owed wages for class members before deducting attorneys' fees and costs is "well-above" average); *Rodriguez v. West Publ'g Corp.*, No. CV05–3222 R(MCx), 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, Case No. 12–cv–06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, No. SACV 12–02161–DOC, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

[plaintiffs'] total claims… [t]hese concrete dollar numbers to be received now are a fair-trade off

for the uncertainties of trial and appeal and a prolonged delay in receiving any money").

### 5.    The Proposed Settlement Treats Class Members Equitably To Each Other

Finally, all settlement class members will receive equitable treatment under the settlement.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds among

Class Members based on the number of workweeks that the particular Class Member worked for

Defendant in the applicable period, which ensures that longer-tenured workers receive a greater

recovery. *See* Settlement, ¶ 2.3. The allocation also tracks the differences in the increased value of

substantive law and penalty claims of Massachusetts and Maine by providing each workweek

worked in those states with three settlement shares instead of two.[7] Settlement, ¶2.3(b)(i). This

allocation method acknowledges the greater value of Maine and Massachusetts unpaid wages

claims, which allow for treble damages. *See* ECF 91, ¶¶ 110-181. *See* Settlement, ¶2.3(b)(i).

Plaintiffs provide a rational and legitimate basis for the allocation method here, and submits that

it should be approved by the Court. *See, e.g., Soto v. O.C. Communications,* No. 17-cv-00251

(N.D. Cal. Oct. 23, 2019) (granting final approval of settlement in wage and hour dispute involving

cable technicians and approving allocation plan that tracks the differences in substantive law

among states).[8] Plaintiffs have demonstrated that the proposed Settlement "falls within the range

---

[7] A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d 935, 979–80 (N.D. Ill. 2011). *Reynolds v. Fidelity Investments Instit. Operations Co., Inc.,* 1:18-cv-423, 2020 WL 91874 (M.D.N.C. Jan. 7, 2020) ("differential treatment" among class members justified by "availability of greater damages" in certain states).

[8] *See also Besic v. Byline Bank, Inc.,* No. 15-C-8003, 2015 WL 13763028, at *1 (N.D. Ill. Oct. 26, 2015) (allocation formula based on number of weeks during relevant time period that particular

of possible approval" and is thus "likely" to be approved, and the Court should preliminarily approve the Settlement and direct notice to the Settlement Class pursuant to Rule 23(e)(1).

### C. The Court Should Preliminarily Certify the State Law Settlement Classes under Rule 23(a) and (b)(3)

In order to obtain approval of the class action settlement on behalf of the Class, the Court must ensure that the prerequisites of class certification under Rule 23 are satisfied. The Parties have stipulated that, for settlement purposes only, the requirements for establishing class certification pursuant to Rule 23(a) and (b)(3) have been met. Settlement, ¶ 1.7. Plaintiffs now move for preliminary certification of the proposed respective Massachusetts, New Hampshire, Maine, and Pennsylvania State Law Settlement Classes under Rule 23(a) and 23(b)(3) defined in Section III A, above.

"To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s…prerequisites of numerosity, commonality, typicality, and adequacy of representation…and must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (quoting Rule 23(b)(3)). The proposed settlement class satisfies the relevant criteria.

#### 1. Numerosity

The numerosity requirement is satisfied here where joinder of all class members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts in this Circuit have generally found that a class of 40 or more individuals satisfies the numerosity requirement." *Michaud*, 2015 WL 1206490, at

---

person worked as percentage of total number of week worked by all potential class members during time period "is a reasonable way of apportioning the settlement among the collective members").

*2. Here, through J&L records, approximately 220 Technicians have been identified who worked in Massachusetts, approximately 100 who worked in Maine, approximately 90 who worked in New Hampshire, and approximately 60 who worked in Pennsylvania during the relevant periods applicable to each State, rendering the classes so large as to make joinder impracticable.

### 2. Commonality

A class also must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." *See In re Relafen Antitrust Litig*., 231 F.R.D. 52, 69 (D. Mass. 2005). When the claims arise out of a companywide policy or practice, the commonality prerequisite is satisfied. *See, e.g., Overka v. American Airlines*, 265 F.R.D. 14, 18 (D. Mass. 2010) (the "commonality requirement is usually satisfied" where "implementation of [a] common scheme is alleged"). Here, the proposed classes satisfy the "commonality" prong because all class members challenge Defendant's compensation policies that denied Technicians payment for all hours worked or jobs completed and failed to pay proper overtime wages and all wages owed. *See, e.g*., *Ripley v. Sunoco, Inc*., 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation").

### 3. Typicality

To meet the requirement of typicality, the class representatives' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (internal quotation marks omitted). Here, the claims of each of the four Named Plaintiff's

claims for unpaid wages and overtime are identical to those asserted on behalf of the Rule 23 class members in the State each Plaintiff seeks to represent. *See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23); *Michaud*, 2015 WL 1206490, at *3 (typicality met where the named plaintiff for each of the four state law classes alleges he was injured by defendant's practice of failing to account for all compensation in calculating overtime in violation of either Maine, Massachusetts, New Hampshire, or Vermont law, since his injury arises from the same course of conduct and legal theories as the other proposed class member in that state).

### 4.    Adequacy

To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Here, each of the Named Plaintiffs share interests identical to those of the putative State Law Class Members that each Plaintiff seeks to represent; namely, all seek to obtain unpaid overtime wages for times in which they worked more than forty hours per week for Defendants. In addition, Class Counsel are highly experienced and have successfully acted as representative counsel in numerous wage and hour actions as well as other complex class actions, in federal and state courts, including class actions involving virtually identical claims. *See Id.*, ¶17 and attachment A (Berger Montague Firm Resume); Cottrell Decl., ¶¶4-5; 21.[9]

---

[9] The same factors supporting the adequacy of Class Counsel also support appointment of Class Counsel under Fed. R. Civ. P. 23(g) which directs courts to appoint class counsel when certifying a class. Rule 23(g)(1)(A) requires the court to consider "(i) the work counsel has done in

### 5.     Predominance

Predominance is satisfied upon showing that a sufficient constellation of common issues bind class members together. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 296 (1st Cir. 2000). The requirement is "merely that common issues predominate, not that all issues be common to the class." *Smilow v. Southwestern Bell Mobile Systems, Inc*., 323 F.3d 32, 39 (1st Cir. 2003). Courts have routinely held that the predominance requirement is satisfied in overtime cases such as this where employees challenge a uniform policy of their employer, because there are common answers that will determine the outcome of the litigation.

Plaintiffs contend that common questions raised in this action predominate over any individualized questions. Resolution over Plaintiffs' claims hinge on Defendant's uniform policies and practices, including those that dictate that workers do not receive compensation for all hours worked. *See Michaud*, 2015 WL 1206490, at *4 (predominance satisfied where "all class members' claims arise out of the same compensation practice—the exclusion of [certain additional] payments in calculating overtime pay, and implicate the same law—the overtime provisions in either Maine, Mass, New Hampshire, or Vermont"). As a result, resolution of these alleged class claims would be achieved through the use of common forms of proof, and would not require inquiries specific to individual class members.

---

identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; (iv) the resources that counsel will commit to representing the class." *See, e.g., Michaud*, 2015 WL 1206490, at *6 (proposed class counsel's experience in wage and hour litigation, extensive work performed in present litigation, continued commitment to represent the class, and absence of conflicts with interests of proposed class support their appointment as counsel for the class and collective under Rule 23(g)).

6.        **Superiority**

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Superiority is satisfied here, where the class members may not have the means to pursue individual actions to recover their damages, and important employment law rights might go unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. In addition, allowing the members of the Settlement Class to participate in a class settlement that yields an immediate, meaningful, and certain relief is superior to having a multiplicity of individual and duplicative proceedings in this Court.

Because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class for settlement purposes only.

D.        **Collective Certification Under 29 U.S.C. § 216(b) is Appropriate**

The Parties have stipulated to final certification of the collective, for settlement purposes only. *Id.* ¶1.6. Courts in the First Circuit typically employ a "two step" approach to certification of an FLSA collective, the first taking place early in the case, when the court simply determines whether the named Plaintiff is "similarly situated" to the proposed class members under 29 U.S.C. § 216(b) sufficient to enable notice to be given to potential collective members. The second stage typically takes place after the close of discovery, when an employer moves to decertify the

collective action. *Johnson v. VCG Holding Corp*., 802 F. Supp. 2d 227, 233 (D. Me. 2011). Here, with respect to the first step, the Court has already conditionally certified a collective under 29 U.S.C. § 216(b) for purposes of sending notice (ECF No. 59), and notice was subsequently sent. Defendant has not moved for decertification of the FLSA claim. *See* ECF No. 98.

The prerequisites for conditional certification of an FLSA collective are more lenient than those under Rule 23, discussed above. *See, e.g., Poreda v. Boise Cascade, LLC*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard). Because the Court should find that the proposed class meets the more stringent requirements of Rule 23, the Court should also find that final certification of the Collective for settlement purposes is appropriate.

### E.    The Service Awards to Named Plaintiffs are Justified and Should be Approved

Jean-Pierre, Metelus, McKee, and Fauntleroy will each seek incentive payments of $10,000 for their efforts in bringing and prosecuting this Action as representative Plaintiffs. Settlement, ¶2.1(b). Subject to Court approval, these amounts will be in addition to Plaintiffs' recovery as Class and Collective Members, and in exchange for Plaintiffs' general release of claims. *Id*. ¶4.5.

"Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated in the litigation." *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005) (citation omitted). Awards in wage and hour cases and other employment cases are generally higher than in other types of cases, and "recently awards of $10,000 and $15,000 are not uncommon, and on occasion reach $20,000, $30,000 and higher."[10] *Scovil,*, 2014 WL 1057079 at *6 (citing Theodore Eisenberg & Geoffrey

---

[10] In *Scovil,* Judge Hornby approved $130,000 in incentive payments ranging from $10,000 to $20,000 for each of nine named plaintiffs who actively participated in the litigation. *Id.* 2014 WL 1057079, at * 7. One of the reasons for awarding higher incentive payments in employment cases,

23

P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006) and collecting cases)). *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action).

"In determining whether a service award is warranted, courts consider the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, and any negative effects that they have risked." *Scovil*, 2014 WL 1057079, at *6 (citation omitted). Here, Plaintiffs provided invaluable assistance to Class Counsel over the course of this litigation concerning the allegations in this lawsuit. They worked with Class Counsel, providing background information about their employment and Defendant's policies and practices, including allegations relating to J&L Cable's practices in Massachusetts, Maine, New Hampshire, and Pennsylvania. All Plaintiffs participated in numerous communications with counsel to assist with the case, and Plaintiffs Jean-Pierre and Metelus provided declarations in support of the motion for conditional certification. Schalman-Bergen Decl., ¶19. All four Plaintiffs bravely took a direct and indirect risk in the community and their field of employment by stepping forward to represent the interests of their fellow workers, knowing their names would appear on a public docket available through an internet search, and knowing that employers might take their participation into consideration when making hiring decisions. *Id.* All Settlement Class and Collective Members will

---

including wage and hour cases, is because of the risk of retaliation. *See, e.g., Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

24

be receiving a significant benefit from Plaintiffs' service in the form of monetary compensation. *Id.* Finally, the service awards requested are in line with others approved in class actions including wage and hour collective and class actions in this district.[11]

**F.      The Proposed Method of Class Notice Should be Approved**

Under Rule 23, the threshold for class notice is that it be "reasonably calculated to reach the class members and inform them of the existence of an opportunity to object to the settlement." *Nilsen v. York County*, 382 F. Supp. 2d 206, 2010 (D. Me. 2005) (citation omitted). Procedural due process requires only that notice be reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Rule 23(c)(2)(B) requires the absent class members receive the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). It is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974);); *Parks v. Portnoff Law Associates*, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate).

The proposed Notice of Settlement (attached as Exhibit A to the Settlement Agreement), and manner of distribution satisfies the requirements of Rule 23. *See* Settlement, Sections 3 (Settlement Administration) and 6 (Notice of Settlement). The Notice clearly identifies basic

---

[11] *See, e.g., Civil v. Spirit Delivery,* Civ. A. No 4:13-12635-TSH (D. Mass. July 24, 2018) (ECF. No. 242) (approving $25,000 for named plaintiff)*; Matamoros et al. v Starbucks Corp.,* Civ. A. No. 1: 08-10772 (D. Mass. Aug. 16, 2013) (ECF No.169) (approving $25,000 incentive payment each for three lead plaintiffs and $15,000 each to two lead plaintiffs in wage action); *Hayes v. Aramark Sports Service LLC*, Civ. A. No 08-10700-RWZ (D. Mass. Sept. 25, 2009) (ECF No. 41) (approving $25,000 enhancement awards to each of two lead plaintiffs); *Sola et al. v. CleanNet USA, Inc*., Civ. A. No 12-10580 (D. Mass. Nov. 26, 2013) (ECF No. 33) (approving $25,000 each to four class representative plaintiffs).

information about the lawsuit, including the monetary awards that will be provided to Settlement Class and Collective Members, the allocation formula, the scope of the release, the requests for attorneys' fees and costs, and service awards, and explains how class members can claim a share of the settlement and dispute a claim, and the procedures and deadlines if they wish to exercise their right to opt-out or object to the settlement. It will also list the date, location, and time of the final fairness hearing and include contact information for class counsel if they need further information. The Notice clearly states that the settlement does not constitute an admission of liability by J&L and makes clear that the final settlement approval decision has yet to be made. *See* Ex. A. Thus, the notice is sufficient.[12] Class Counsel expects to be able to contact most of the class members through first-class mail and by email (if available). In addition, the Parties will provide a settlement website that provides a generic form of the Notice, the Settlement, and other case-related documents, and contact information. *See* Settlement, 3.1(c).

     **G.**    **The Requested Attorneys' Fees and Costs are Fair, Reasonable, and Supported by Applicable Precedent**

In the motion for final approval, Class Counsel will request an award of attorneys' fees of $616,667.00, or one-third of the total settlement, and out-of-pocket costs of not to exceed $50,000 to reimburse Class Counsel for all work performed in the case as well as all work remaining to be done. Settlement, ¶ 2.1(a). The proposed Notice will inform class members that Plaintiffs' Counsel will seek these attorneys' fees and costs in these amounts. *See* Settlement, Exhibit A.

---

[12] *In re Compact Disc Minimum Advertised Price Antitrust Litig*., 216 F.R.D. 197, 203 (D. Me. 2003) ("The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class."); *Lapan v. Dick's Sporting Goods, Inc*., No. 1:13-cv-11390-R, 2015 WL 8664204, at * (D. Mass. Dec. 11, 2015) (notice of settlement to FLSA and state law classes complies with due process and Rule 23 which "describes the terms of the settlement, informs the class about the allocation of attorney's' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

Courts generally favor awarding fees from a common fund based upon a percentage of the fund. *Belling Company v. Van Gemert*, 444 U.S. 472, 478 (1980), and a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable. *See, e.g., Mansingh v. Exel Direct, Inc.*, C.A. No. 12-11661-DPW (D. Mass. May 7, 2014) (awarding one-third fee in settlement for $1 million); *Chalverus v. Pegasystems, Inc.*, Civ. A. No. 97-12570-WGY (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery). Given this precedent, and, for the reasons to be submitted in the Final Approval Motion, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

## H.     The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. Settlement, ¶ 6.1. Plaintiffs respectfully request this Court approve the proposed schedule as follows:

| | |
|---|---|
| Defendant to send CAFA Notice | Within ten (10) days of submission of the Settlement Agreement to the Court |
| Defendant to Provide Settlement Administrator and Class Counsel with Class Information | Within fourteen (14) days after the Court's Preliminary Approval Order |
| Notice Sent by Settlement Administrator | Within twenty-one (21) days after the Court's Preliminary Approval Order |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs | Fourteen (14) days prior to the Notice Deadline |
| Deadline to Postmark Objections or Requests for Exclusion ("Notice Deadline") | Sixty (60) days after the Settlement Notice is initially mailed |
| Plaintiffs' Motion for Final Approval | Ten (10) days prior to the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, not less than one hundred (100) calendar days after the Court's Preliminary Approval Order or ninety (90) calendar days after CAFA notice is sent; No |

| | earlier than thirty (30) days after the Notice Deadline |
|---|---|

## V.  CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court enter the accompanying Order and grant preliminary approval of this proposed settlement and allow Plaintiffs to send class members the proposed Notice attached hereto as Exhibit A.

Dated: October 14, 2020

Respectfully submitted,

/s/ Shoshana Savett
Sarah R. Schalman-Bergen
Shoshana Savett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
stsavett@bm.net

Matthew W. Thomson, BBO #682745
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
mthomson@llrlaw.com

Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com

28

oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

*Attorneys for Plaintiffs, the Collective and
Putative Class*


## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have discussed this motion with counsel for Defendants J&L

Cable TV Services, Inc. and that Defendant assents to the relief requested.

_/s/ Shoshana Savett_____

29

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 14, 2020, a copy of this document was served by electronic filing on all counsel of record.

_/s/ Shoshana Savett_____
Shoshana Savett