**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBENSON JEAN-PIERRE, JEAN METELUS, BILL MCKEE and MICHAEL GARY FAUNTLEROY, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>J&L CABLE TV SERVICES, INC.,<br><br>　　　　　Defendant. | Docket No. 1:18-cv-11499-MLW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND........................................................ 2

III.    KEY TERMS OF THE SETTLEMENT .......................................................... 5

        A.      Definitions of the Proposed Settlement Classes and Collective ........................... 5

        B.      Releases.......................................................................................... 6

        C.      Attorneys' Fees, Expenses, and Class Representative Incentive Awards ............. 6

        D.      Distribution of the Gross Settlement Amount and Plan of Allocation ................. 7

IV.     NOTICE WAS WIDESPREAD AND ADEQUATE........................................................ 9

V.      ARGUMENT ................................................................................................ 10

        A.      The Settlement Is Fair, Reasonable, And Adequate, And Should Be Approved.. 10

                1.      The Settlement is presumptively reasonable because the terms of the
                        Settlement were negotiated at arm's length following substantial
                        discovery. ................................................................................. 12

                2.      The relief obtained is substantial, especially taking into account the risk,
                        complexity, expense, and likely duration of the litigation...................... 13

                3.      The Classes' reaction to the Settlement is highly positive as there have
                        been no objections or requests for exclusion. ......................................... 17

        B.      The Court Should Grant Final Class Certification for Settlement Purposes ........ 18

        C.      The Court Should Approve the Service Awards to the Class Representatives..... 18

VI.     CONCLUSION........................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Bacchi v. Mass. Mut. Life Ins. Co.*,
Civil Action No. 12-11280-DJC, 2017 U.S. Dist. LEXIS 184926 (D. Mass. Nov. 8, 2017) ... 19

*Bezdek v. Vibram USA, Inc.*,
809 F.3d 78 (1st Cir. 2015) ................................................................................. 11, 12, 14, 16

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ................................................................................. 12, 17

*Hochstadt v. Bos. Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................................... 12, 13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................................ 11, 13

*Hill v. State Street Corp.*,
2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014) ............................................. 13, 14

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
No. MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041 (D. Mass. Sep. 8, 2014) ........ 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ...... 13

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ............................................................................................... 17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ..................................................................................................... 11

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ......................................................................................... 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................................ 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ................................................................................................................. 11

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Benefits Fund*,
582 F.3d 30 (1st Cir. 2009) ..................................................................................................... 11

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   602 F. Supp. 2d 277 (D. Mass. 2009) ...................................................................... 11

*Reppert v. Marvin Lumber and Cedar Co., Inc.*,
   359 F.3d 53 (1st Cir. 2004) ...................................................................................... 10

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ................................................................................. 12

*Scovil v. FedEx Ground Package Sys.*,
   No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014) ............ 18, 19

*Sewell v. Bovis Lend Lease LMB, Inc.*,
   2012 U.S. Dist. LEXIS 53556, (S.D.N.Y. Apr. 16, 2012) ........................................ 20

**Statutes**

28 U.S.C.§ 1715(c)(1) ...................................................................................................... 4

29 U.S.C.A. § 207(i) ......................................................................................................... 3

Fed. R. Civ. P. 23(c)(2) .................................................................................................... 9

Fed. R. Civ. P. 23(e)(1) .................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) .................................................................................................. 10

Fed. R. Civ. P. 23(h) ........................................................................................................ 9

**Rules**

Rule 23 ........................................................................................... 9, 10, 16, 18, 20

Rule 23(b)(3) .................................................................................................................... 9

Rule 23(c) ........................................................................................................................ 9

## I.       INTRODUCTION

Plaintiffs Robenson Jean-Pierre, Jean Metelus, Bill McKee, and Michael Gary Fauntleroy ("Plaintiffs"), respectfully seek final approval of the collective and class action Settlement[1] on behalf of current and former cable technicians ("Technicians") for Defendant J&L Cable TV Services, Inc. ("Defendant" or "J&L").

The Settlement is presumptively fair, reasonable, and adequate because it was reached through arms-length negotiations.  This Court already recognized as much in its May 10, 2021, preliminary approval order: "The parties reached this settlement through mediation and arms-length negotiation after two years of difficult litigation, including discovery, and while facing the proposed of lengthy additional litigation of settlement had not been reached." Dkt. No. 137, p. 8. The Class and Collective Members agree with the Court and received the Settlement with overwhelming approval: filing *zero* objections and requesting *zero* exclusions from the Settlement.

This Settlement resolves the wage and hour claims of 632 Technicians,[2] for a total non-reversionary gross settlement amount of $1,850,000. In particular, the estimated average Class and Collective Member recovery is approximately $1,800. The maximum payment is over $12,300, and approximately 318 Settlement Class and Collective Members are estimated to receive over $1,000, with 185 Settlement Class and Collective Members estimated to receive over $2,000.

This exceptional result only came after multiple years of hard-fought litigation in the face of substantial risk, including the risk that class certification would not be granted, or that a

---

[1] The "Settlement" or "Settlement Agreement" refers to the Class and Collective Action Settlement Agreement and Release, filed at Dkt. No. 121-1.

[2] For mediation, Class Counsel estimated there was a total of 545 Class and Collective Members. Dkt. No. 131, at p. 9, n. 4. Following preliminary approval of the Settlement, J&L produced a Class List of 630 unique Class Members, and the Settlement Administrator identified 2 additional Class Members who had not been on the Class List. Declaration of Steve Platt, Project Manager of Angeion Group ("Platt Decl.") ¶ 4.

decertification motion would be granted.

The four named Plaintiffs each played a vital role in obtaining this substantial relief for their fellow class members. Plaintiffs therefore seek approval, consistent with the terms of the Settlement, of Service Awards of $10,000 each for Plaintiffs Jean-Pierre, Metelus, McKee, and Fauntleroy.

By any measure, the Settlement provides a great benefit to the Class and Collective and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Plaintiffs respectfully request that the Court grant this Motion in its entirety.

## II.        PROCEDURAL AND FACTUAL BACKGROUND

J&L provides cable and equipment installations on behalf of cable operators throughout the Northeast Region and Florida. Plaintiffs allege that J&L Technicians experience wage and hour violations under the FLSA and labor laws of Massachusetts, Maine, New Hampshire, and Pennsylvania. Plaintiffs allege that J&L failed to pay proper minimum wages, overtime wages, and completed piece rates to Class and Collective Members, and forced them to incur work-related expenses that were improperly deducted from earned wages. *See* Dkt. No. 91 at ¶¶ 19, 21, 30, 48-49; Settlement ¶ 1.1.

On October 7, 2019, the Court granted Plaintiffs' Motion and conditionally certified the case as a collective action and allowing dissemination of Notice (Dkt. No. 59), after which Notice was sent to over 600 J&L Technicians who performed work in numerous states, including Florida, Pennsylvania, Massachusetts, New Hampshire, and Maine. A total of 218 Technicians filed consents to opt-in to the Action ("Opt-In Plaintiffs"), including Named Plaintiffs. *See* Dkt. No. 98.

Plaintiffs filed a First Amended Complaint ("FAC") on February 28, 2020, adding Bill McKee as a named Plaintiff asserting state wage law claims on behalf of Maine and New

Hampshire Classes and Michael Gary Fauntleroy as a named Plaintiff asserting state wage law claims on behalf of a Pennsylvania Class, based on the same allegedly improper compensation practices by J&L. Dkt. No. 91. Defendant filed its answer to the FAC on March 19, 2020. Dkt. No. 93.

On May 5, 2020, the Parties participated in a full-day remote mediation session with respected and experienced wage and hour mediator Mark Irvings.  Dkt. No. 121-2 ("Schalman-Bergen Prelim. App. Decl."), ¶ 11; Settlement ¶ 1.5. Prior to the mediation, Plaintiffs prepared a detailed mediation statement and performed calculations of potential damages based on extensive pay data provided by Defendant. Schalman-Bergen Prelim. App. Decl. ¶ 11.

The Parties were unable to reach an agreement following the May 5 mediation, and the litigation then proceeded in the normal course. On May 22, 2020, Defendant filed a motion to amend its answer to Plaintiffs' FAC to include a defense that the technicians were exempt from overtime under the FLSA pursuant to the retail exemption set out in 29 U.S.C.A. § 207(i), and exempt from overtime in under Pennsylvania and New Hampshire wage laws pursuant to comparable exemptions under those states' laws (Dkt. No. 100), which Plaintiffs opposed (Dkt. No. 104). Following a hearing, the Court denied Defendant's motion to amend. Dkt. No. 105. On June 24, 2020, Defendant filed Objections to the Magistrate's Order denying its motion to amend. Dkt. No. 107. Plaintiffs filed an Opposition to Defendant's Objections on July 8, 2020. Dkt. No. 109.

From the time of the initial mediation session of May 5, 2020, the Parties continued arms'-length negotiations. *Id.*, ¶¶ 11-12. The Parties eventually reached an accord with Mr. Irvings' assistance on August 26, 2020, which resulted in the Settlement. *See id.* ¶ 12; Declaration of Carolyn Hunt Cottrell in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs

("Cottrell Fee Decl."), Dkt. No. 142-2 ¶ 38. The Parties memorialized their agreement in principle in a binding Memorandum of Understanding ("MOU") on August 28, 2020. *Id.*; *see* Dkt. No. 131-1 at pp. 54-57.

The Parties then negotiated and drafted the long-form Settlement Agreement. Cottrell Fee Decl. ¶ 39; Declaration of Alexandra K. Piazza in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs ("Piazza Fee Decl."), Dkt. No. 142-3, ¶¶ 19-20. The Settlement Agreement is detailed and complex, as it resolves a hybrid FLSA collective and Rule 23 action with four state law classes and workweek weightings to account for differences in state laws. *Id.* The Parties executed the finalized Settlement on October 14, 2020. *Id.* ¶ 40.

Class Counsel then drafted the preliminary approval motion and supporting papers, filed with the Court on October 14, 2020. *See* Dkt. Nos. 120-121; Cottrell Fee Decl. ¶ 41. On February 2, 2021, the Court ordered the four Named Plaintiffs to attend the hearing and be prepared to discuss their attorneys' fee agreements. *See* Dkt. No. 124. Plaintiffs appeared and testified before the Court, on February 3, 2021. *See* Dkt. No. 125.[3]

The Court ordered Plaintiffs to file supplemental briefing concerning whether the Court has supplemental jurisdiction over the state law claims, the adequacy of the proposed class representatives, and how Class Counsel calculated their damages estimate. *See* Dkt. No. 126. Class Counsel filed the supplemental briefing along with other documents requested by the Court on February 16, 2021. *See* Dkt. No. 131. As part of this submission, Class Counsel proffered redacted

---

[3] At that hearing, J&L's counsel also confirmed that J&L had provided notice of the Settlement under the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1), to the U.S. Attorney's Office and the Attorney General's Offices for the states involved pursuant to the Settlement without response. Settlement, ¶ 5.5.1.a; Declaration of Ori Edelstein in Support of Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement ("Edelstein Decl."), Ex. A, Preliminary Approval Hearing Transcript, 94:6-23.

versions of the retainer agreements, which were ultimately re-filed pursuant to the Court's order granting in part and denying in part Plaintiffs' motion for leave to file under seal, *see* Dkt. Nos. 140-141, declarations from each of the four Named Plaintiffs, and an updated form of settlement notice. *See* Dkt. No. 131.

Upon considering the supplemental submission, the Court granted preliminary approval on May 10, 2021. Dkt. No. 137. Class Counsel worked with the Court-appointed settlement administrator, Angeion Group ("Angeion"), to disseminate the settlement notice and establish the settlement website pursuant to the Settlement and the Court's Preliminary Approval Order. Cottrell Fee Decl. ¶ 41; Piazza Fee Decl. ¶¶ 17, 21-22, 24.

### III.        KEY TERMS OF THE SETTLEMENT

#### A.        Definitions of the Proposed Settlement Classes and Collective

The Court preliminarily certified the "State Law Settlement Class" or "State Law Class," as defined in the Settlement as follows:

- The "Massachusetts State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Massachusetts between July 18, 2015 and August 28, 2020.

- The "New Hampshire State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in New Hampshire between July 18, 2015 and August 28, 2020.

- The "Maine State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Maine between July 18, 2012 and August 28, 2020.

- The "Pennsylvania State Law Class" means all individuals who worked for J&L Cable TV Services, Inc. as a Technician in Pennsylvania between July 18, 2015 and August 28, 2020.

Order 137, at p. 10; Settlement ¶ 1.1.7. The Court also certified the "Settlement Collective," as defined in the Settlement as follows:

> All current and former Technicians who were employed by J&L Cable TV Services, Inc. between July 18, 2015 and August 28, 2020 who have opted in to *Robenson Jean-Pierre, Jean Metelus, Bill McKee and Michael Gary Fauntleroy, individually and on behalf of all similarly situated individuals v. J&L Cable TV Services, Inc.,* Civil Action No. 1:18-cv-11499, currently pending in the United States District Court for the District of Massachusetts ("Settlement Collective Members").

Order 137, at p. 9; Settlement ¶ 1.1.6. There are a total of 632 Settlement Class and Collective members. Platt Decl., ¶ 4.

### B.    Releases

The Settlement Agreement provides separate Releases for the respective claims of the Settlement Collective and the State Law Settlement Classes. Each Release is appropriately limited to claims that were asserted under the FLSA and/or Massachusetts, Maine, New Hampshire, and/or Pennsylvania law, based on the facts alleged in the operative First Amended Complaint (Dkt. No. 91). Settlement ¶ 4.1-4.2. In addition, Settlement Class Members who are not Settlement Collective Members and who cash, deposit, or otherwise negotiate their Settlement Award checks also release any and all claims against the Releasees under the FLSA based on the same factual predicates. *Id.* ¶ 4.3. Named Plaintiffs agreed to a broader "general release" in exchange for the additional consideration of their service awards. *Id.* ¶ 4.4.

Finally, each settlement check will contain an endorsement on the back of the check to satisfy any applicable procedural protocols under the FLSA, as appropriate for Named Plaintiffs and Collective Members and other Settlement Class Members. *Id.* ¶ 4.5.

### C.    Attorneys' Fees, Expenses, and Class Representative Incentive Awards

Subject to Court approval, J&L will pay Class Counsel's attorneys' fees in the amount of $616,667 and actual attorneys' costs of $44,191.25. On July 16, 2021, in accordance with the Court's Order granting preliminary approval, Plaintiffs filed their Motion for Attorneys' Fees and Costs seeking payment in these amounts. Dkt. No. 142. These documents were uploaded onto the

settlement        website.        *See*        settlement        website,        available        at
https://www.jandlflsalitigation.com/important-documents.php (last viewed on August 9, 2021).

Further, subject to Court approval, J&L will pay incentive awards to each Class
Representatives not to exceed $10,000 for each of the four Class Representatives, for a total of
$40,000. Settlement ¶ 2.2.1.b.

### D.    Distribution of the Gross Settlement Amount and Plan of Allocation

The $1,850,000 Gross Settlement Amount includes (subject to Court approval) amounts to
cover Class Counsel's attorneys' fees not to exceed one-third of the Gross Settlement Amount
(*i.e.,* $616,667.00) and reimbursement of out-of-pocket costs of $44,191.25, *see* Dkt. No. 142,
service awards not to exceed $10,000 to each of the four Named Plaintiffs (*i.e*., $40,000 total), and
the costs of Settlement Administration, which are currently estimated to be $30,390. *See*
Settlement ¶ 2.1; *see also* Platt Decl., ¶¶ 15, 22.

Subject to Court approval, J&L will electronically transfer the Gross Settlement Amount
into a Qualified Settlement Fund ("QSF") to be set up and administered by the Settlement
Administrator, the first payment of $168,181.80 paid within fifteen (15) business days after the
Court's Order granting preliminarily approving the Settlement on May 10, 2021. Subsequent
payments shall be paid in ten equal installments of $168,181.82, which shall be paid on the first
calendar day of every month thereafter, although nothing in the Settlement Agreement shall
preclude Defendant from paying the entire amount earlier than scheduled. Settlement ¶ 2.2. The
QSF is administered by Angeion, the Court approved claims administration company, subject to
final approval. *See* Dkt. No. 137 at pp. 10-11.

After deducting the requested amounts of attorneys' fees and costs, service awards, and
settlement administration costs, the entire remaining amount – the "Net Settlement Amount" – will
be distributed to all Settlement Class and Collective Members (with the exception of those who

exclude themselves from the Settlement, of which there are none) who will all receive a settlement award check without the need to submit a claim form. *Id.* ¶ 2.3.

Each Settlement Class and Collective Member will receive a minimum payment of $50.00. *Id.* ¶ 2.3(a). In addition to the minimum payment, each Settlement Class and Collective Member will receive a *pro rata* portion of the Net Settlement Amount under an allocation formula based on the total number of workweeks (settlement shares) that the respective Class and Collective Member worked for J&L during the applicable limitations period. Workweeks during which work was performed in Massachusetts and Maine will be credited with additional settlement shares to recognize the increased value of those state law claims. *Id.* ¶ 2.3(a)(b)(i); *see also id.* ¶¶2.3(iii), 3.3. The total number of settlement shares will be added together, and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Class Member's number of settlement shares to determine the Class Member's Settlement Award. *Id.* ¶ 2.3(b) (ii).

Under the schedule set forth in the Settlement Agreement, Settlement Awards for each Settlement Class and Collective Member will be mailed to them after the later of the Court's Final Approval or the full funding of the Gross Settlement Amount into the QSF. *Id.* ¶2.3(d).

If *less* than $50,000 remains after the 180-day check-cashing period, the remaining amount will be distributed to the Parties' agreed-upon *cy pres* recipient Greater Boston Legal Services,[4]

---

[4] The Parties' agreed-upon *cy pres* recipient, Greater Boston Legal Services ("GBLS") provides free legal assistance for low-income individuals and families to help them secure or preserve basic critical necessities of life – shelter, food, protection against violence, and subsistence income. One of GBLS' focuses is on assisting low-wage workers denied their earned wages and benefits, including providing legal assistance to such workers regarding the nonpayment of wages, and minimum wage and overtime pay violations in violation of state and federal wage and hour laws. *See* https://www.gbls.org/our-work/employment (last accessed Aug. 12, 2021). Every year GBLS helps more than 10,000 low-income families and individuals solve their civil (non-criminal)

(subject to this Court's final approval). If the residual amount is *$50,000 or more*, a second distribution will be made on a *pro rata* basis to those Settlement Class and Collective Members who have cashed their checks. *Id.* If there are any funds remaining after redistribution, and after deducting related additional settlement administration costs, the remaining amount shall revert to the *cy pres* recipient. No funds will revert to J&L Cable. *Id.* ¶2.3(d).

## IV.      NOTICE WAS WIDESPREAD AND ADEQUATE

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). Rule 23 further requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal" (Fed. R. Civ. P. 23(e)(1)), and that notice of class counsel's motion for attorneys' fees and expenses be provided to class members (Fed. R. Civ. P. 23(h)).

The Court already approved the Notice, and the proposed method of dissemination as meeting the requirements of due process and as the best notice practicable. *See* Preliminary Approval Order, Dkt. No. 137, at p. 11. The dissemination process was effectuated in accordance with the Preliminary Approval Order and comports with Rule 23(c) and due process.

Consistent with the Preliminary Approval Order, Angeion, the court-approved Settlement Administrator, sent the form of notice approved by the Court via e-mail on May 28, 2021 to 418 Class Members for whom an email address was provided, of which only 7 were undeliverable. Platt Decl. ¶ 11. On June 1, 2021, the Class Notice was sent by first class mail to 631 Class Members' last known addresses as provided by J&L's databases and as updated with contact

---

problems. The Court should approve GBLS as a worthy and appropriate recipient of *cy pres* funds in this case.

information provided by Class Counsel. *Id.*, ¶ 12 (the Notice was also sent to the final identified Class Member on July 6, 2021). Following attempts to update records and advance address searches to locate updated addresses, only 15 notices were undeliverable by mail. *Id.*, ¶¶ 19-21.[5] Angeion further established and maintains both a toll-free number for Class Member inquiries and a dedicated website that has been visited over 1,100 times and which provides a summary of the Settlement, frequently asked questions, and copies of all documents filed in support of the Settlement. *Id.*, ¶¶ 7, 9.

The opt-out deadline expired on August 10, 2021. *Id.*, ¶ 17. As of August 16, 2021, **_zero requests for exclusion or objections have been received_**. *Id.*, ¶ 18. Three Class Members have disputed their number of workweeks, and following Angeion's investigation with Class Counsel and J&L's Counsel, all three disputes were resolved. *Id.* ¶ 15.

As set forth herein, all reasonable steps have been taken to apprise Class Members of their rights. The notice campaign has been thorough and demonstrate that Rule 23's requirements and due process are well satisfied.

## V.  ARGUMENT

### A.  The Settlement Is Fair, Reasonable, And Adequate, And Should Be Approved

A district court can approve a class action settlement only if it is fair, adequate and reasonable. Fed. R. Civ. P. 23(e)(2). "[T]he district court enjoys considerable range in approving or disapproving a class settlement, given the generality of the standard and the need to balance [a settlement's] benefits and costs." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters*

---

[5] The First Circuit's standard for class notice requires that the notice ordered be reasonably calculated to reach absent class members; it is not meant to guarantee that every class member entitled to notice actually receives such notice. *See Reppert v. Marvin Lumber and Cedar Co., Inc.*, 359 F.3d 53, 56-57 (1st Cir. 2004).

*Benefits Fund*, 582 F.3d 30, 45 (1st Cir. 2009) ("*Chain Drug Stores*")). In the exercise of this discretion, courts in this jurisdiction have considered a wide range of factors in deciding whether to approve a settlement, which ultimately involve "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA, Inc*., 809 F.3d 78, 82 (1st Cir. 2015) (quoting *Chain Drug Stores*, 582 F.3d at 44)).

If the parties negotiated at arm's length and conducted sufficient discovery, a presumption is created that the settlement is reasonable. *See In re Pharm. Indus. Average Wholesale Price Litig*., 588 F.3d 24, 32-33 (1st Cir. 2009). Moreover, in assessing final approval, courts within this District have frequently used the factors articulated in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), overruled on other grounds by *Missouri v. Jenkins*, 491 U.S. 274 (1989):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc*., 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009) ("*New England Carpenters*") (quoting *Grinnell*, 495 F.2d at 463).[6] An application of these factors uniformly favors granting final approval of the Settlement.

---

[6] The First Circuit's opinion affirming *New England Carpenters* discusses the standard in more abstract terms centering on the district court's discretion. "Rule 23's reasonableness standard has been given substance by case law offering laundry lists of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify; usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Chain Drug Stores*, 582 F.3d at 44.

> **1.      The Settlement is presumptively reasonable because the terms of the Settlement were negotiated at arm's length following substantial discovery.**

As an initial matter, there is a presumption that the Settlement is reasonable as the terms of the settlement were negotiated at arm's length by competent counsel during extensive supervised mediation and negotiations. Courts consider the length of time the parties engaged in settlement negotiations in determining good faith. *Rolland v. Cellucci*, 191 F.R.D. 3, 11 (D. Mass. 2000) (the seven months of intense negotiation prior to settlement indicated the parties' good faith); *Bussie*, 50 F. Supp.2d at 77 (that the settlement negotiations occurred over a several month period gave rise to a strong presumption of fairness). Courts further consider the stage of the proceedings and amount of discovery completed to ensure the parties possessed information sufficient "to make an intelligent judgment about settlement." *Bezdek*, 79 F. Supp. 3d at 348. This inquiry "is only incidentally answered quantitatively by the number of pages in the documents that were produced or witnesses who were deposed"; the determination "must ultimately be a qualitative one." *Id.*[7]

Here, the Settlement was negotiated at arm's length by experienced counsel on both sides, who are fully versed in complex class action litigation, particularly with respect to wage and hour litigation. *See* Schalman-Bergen Prelim. App. Decl. ¶ 13; Cottrell Fee Decl., ¶¶ 8-10; Piazza Fee Decl., ¶¶ 2-5, Ex. A. Settlement negotiations were conducted over a period of nearly five months and overseen by a highly skilled mediator. *See* Schalman-Bergen Prelim. App. Decl., ¶¶ 11-12. Significant formal and informal discovery was conducted and Class Counsel's analysis of the

---

[7] *See also Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (the standard "does not require that discovery be completed, but rather than sufficient discovery be conducted to make an intelligent judgment about settlement"); s*ee also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 471 (D.P.R. 2011) (granting final approval where, *inter alia*, "the settlement agreements were negotiated at arm's length as the negotiations were long and arduous, spanning a considerable time-period" and "the parties were sufficiently informed by the informal discovery that occurred").

merits of the claims of this action were based on such discovery, as well as on in-depth interviews with Class and Collective members and their experience handling similar claims. *See* Schalman-Bergen Prelim. App. Decl., ¶¶ 11, 13; Dkt. No. 121-3, Cottrell Prelim. App. Decl., ¶¶ 9-16. Both the participation of the skilled mediator and the experience of counsel as longstanding class-action attorneys handling wage and hour cases support a finding that there were arm's length negotiations based on substantial discovery that led to a fair and reasonable settlement. *Cf. Hochstadt v. Bos. Scientific Corp*., 708 F. Supp. 2d 95, 108 (D. Mass. 2010) (evaluating the experience of counsel in preliminary approval process as a factor that contributes to the presumption of fairness); *In re Flag Telecom Holdings,* No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *41 (S.D.N.Y. Nov. 5, 2010) (experience of counsel and skill of mediator contribute to presumption of fairness). The presumption of reasonableness of the settlement therefore applies.

> ## 2. The relief obtained is substantial, especially taking into account the risk, complexity, expense, and likely duration of the litigation

In assessing the reasonableness of a class action settlement, the pertinent question "is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *Hill v. State St. Corp.,* 2014 U.S. Dist. LEXIS 179702, at *26 (D. Mass. Nov. 26, 2014). The Court should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment." *Id*. (quoting *Grinnell*, 495 F.2d at 462) (alterations omitted). The Second Circuit explained in *Grinnell* that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." 495 F.2d at 455. Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 455 n.2.

13

This Settlement falls well within the range of reasonableness. The negotiated non-reversionary Gross Settlement Amount of $1,850,000 represents a compromised portion of the total unpaid wages that would have resulted if Plaintiffs proved at trial that they worked off the clock approximately 30 minutes each day during the entire time period.[8] *See* Schalman-Bergen Prelim. App. Decl., ¶ 14. Based on this best-case scenario, the total potential exposure, including, the total unpaid wages along with any liquidated damages and other penalties, is approximately $5.32 million for the 632 Settlement Class and Collective Members. *See* Edelstein Decl., ¶ 5.[9] Thus, the Gross Settlement Amount equals approximately 35% of the total potential damages that could have been obtained if Plaintiffs won on all alleged claims at trial. *See id.*, ¶ 6. In other words, even with the increase in Settlement Class and Collective Members, the estimated average Class and Collective Member are still estimated to recover approximately $1,800. The maximum payment is over $12,300, and over 318 Settlement Class and Collective Members are estimated to receive over $1,000, with over 185 Settlement Class and Collective Members estimated to receive over $2,000. Platt Decl., ¶ 16.

A recovery as here in the 35% range is more than reasonable. *See Bezdek*, 79 F. Supp. 3d

---

[8] Although it may be possible that J&L could withstand a greater judgment than the amount it will be required to pay under the Settlement, "a defendant is not required to empty its coffers before a settlement can be found adequate." *Hill v. State St. Corp*., 2014 U.S. Dist. LEXIS 179702, at *25 (D. Mass. Nov. 26, 2014). In *Hill*, the court reasoned that State Street's financial wherewithal, "standing alone, is not sufficient to preclude a finding that a settlement is fair, reasonable and adequate where other factors weigh in favor of approving the settlement," this factor is "neutral." *Id.* (citation omitted).

[9] Based on the original data produced by J&L prior to mediation, Class Counsel calculated the total amount of potential exposure as approximately $4.68 million, based on an estimated 545 Class and Collective Members and on a best-case scenario of 30 minutes of off the clock work performed each work day. Dkt. No. 131, at pp. 9-12. Following preliminary approval of the Settlement, J&L produced a Class List of 632 unique Class and Collective Members. According to these updated numbers, the total potential exposure, based on the same assumptions above, is $5.32 million. *See* Edelstein Decl., ¶ 5.

at 345 (finding settlement that provided payment of 9% of purchase price for footwear was reasonable; worst case scenario was no recovery, best case was 100% of purchase price); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.,* No. MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041, at *21 (D. Mass. Sep. 8, 2014*)* ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair"); *In re Tyco Int'l, Ltd. Multidistrict Litig.,* 535 F. Supp. 2d 249, 261 (D.N.H. 2007) (settlement that provides approximately 27% of the alleged damages to the class is "outstanding" result). This result adequately reflects the strengths and challenges of Plaintiffs' case.

While Plaintiffs believe their claims are supported in fact and law, they recognize that proceeding with litigation entails significant risk and will likely take years to reach judgment following a trial, and perhaps an appeal. The reasonableness of the Settlement is further underscored by the fact that J&L has legal and factual grounds available to defend this action.[10] J&L takes the position that this case is not suitable for class treatment, that they fully complied with their obligations under the applicable state wage and hour laws, and that Plaintiffs and the Class Members are not entitled to damages, penalties, or other relief sought. The parties dispute whether the practices complained of occurred at all, let alone whether Plaintiffs can show that they were common practices that applied to all Class and Collective members. The Parties further dispute whether the three-year limitations period under the FLSA applies, or whether the two-year period for non-willful violations would be applicable in this matter. The Parties also dispute whether this case could be tried on a collective and class action basis, and whether the applicability

---

[10] J&L's willingness to fight these arguments is further supported by its motion to amend its answer to clarify its affirmative defenses, and its further objections to Magistrate Judge Kelley's order denying that motion, which was pending when the Settlement was reached in this action. *See* Dkt. Nos. 100, 105, 107.

of potential liquidated damages would be mandated in this action.

Plaintiffs face other significant risks if the Settlement is not approved, including moving for class certification on behalf of four Rule 23 classes and maintaining FLSA certification of the collective, both of which require additional investigation and outreach efforts by Class Counsel to obtain supporting evidence, and which would be vigorously contested by J&L. Plaintiffs would then need to establish class-wide liability, and prove up various issues regarding damages and penalties, which would also be vigorously disputed by J&L. Such efforts would likely take many more months, if not years, and would necessitate expert witness testimony and significant additional litigation. J&L, represented by experienced lawyers, raised the above arguments, and more, in mediation and would have done so in continued litigation.

These risks must be weighed against the monetary value of the Settlement, which represents a fair compromise given the risks and uncertainties posed by continued litigation. If the Actions were to go to trial as a class and collective action (which Defendant would vigorously oppose if this Settlement were not approved), fees and costs continue to mount. The issues here are complex and would be vigorously contested, resulting in significant time and expense. It would require depositions of the parties or their representatives and other witnesses, depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports.

Barring settlement, the Parties also would have to engage in extensive motions practice including for class certification, conditional decertification, discovery motions, and dispositive motions. *See Bezdek*, 79 F. Supp. 3d at 344 ("[T]he plaintiffs have identified meaningful concerns with class certification and would need to litigate these issues more fully in order to proceed to

16

trial. Both parties would conduct further discovery, including extensive expert discovery, followed very likely by a motion for summary judgment and renewed settlement discussions. All of these efforts would extend the litigation and associated costs further, decreasing the net benefit of any damages award obtained at trial."). Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, especially in light of the uncertain future of businesses due to the COVID-19 pandemic, further litigation could result in no recovery for the Class Members at all.

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. All Class Members are treated alike, as they will automatically receive a *pro rata* share of the Net Settlement Amount, subject to Court approval. The Settlement brings finality to over three years of arduous litigation, and will foreclose the possibility of expanding litigation, and thus, should be approved here.

### 3. The Classes' reaction to the Settlement is highly positive as there have been no objections or requests for exclusion.

Final approval is warranted in light of the overwhelming acceptance of the Settlement. Reaction to a settlement is considered positive when the number of objectors is minimal compared with the number of claimants, and if notice effectively reached absent class members. *See In re Lupron(R) Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 96 (D. Mass. 2005). A small percentage of objections and exclusions is an important factor contributing to a conclusion that a settlement is fair and reasonable. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("*Bussie*"). Here, the reaction has been unquestionably positive. Not one of the Class Members requested exclusion or submitted an objection to the Settlement. *See* Platt Decl. ¶ 18.

The Notice of Settlement clearly sets forth the terms, the maximum associated fees and

costs,[11] estimated relief,[12] and releases of the Settlement, and further provides the Class Members with a website of all documents filed in support of the Settlement, including Plaintiffs' motion for attorneys' fees and costs. *See* Platt Decl., Ex. A. With this full disclosure, ***no*** Technician voiced any objection to the Settlement. Thus, this factor weighs heavily in favor of final approval of the Settlement.

**B.    The Court Should Grant Final Class Certification for Settlement Purposes**

This Court has already granted preliminary certification of the four proposed Settlement Classes for purposes of the Settlement under Rule 23. Preliminary Approval Order, Dkt. No. 137, at pp. 6, 10. Nothing has occurred since then to cast doubt on this determination, and Plaintiffs respectfully submit that final class certification for settlement purposes is warranted for the same reasons previously presented to the Court. Plaintiffs will not burden the Court by repeating the arguments made in their preliminary approval brief and supplemental brief in support of preliminary approval. *See* Dkt. No. 131, at pp. 1-12; Dkt. Nos. 120-121.

**C.    The Court Should Approve the Service Awards to the Class Representatives**

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package Sys.,* No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *22 (D. Me. Mar. 14, 2014). Service awards "are customary and appropriate in recognition of a named plaintiff who has served, as is the case here, as the class representative through extensive

---

[11] The Notices included the maximum amount of service awards ($10,000 per named Plaintiff), settlement administration fees ($34,000; the adjusted request based on the Platt Decl. is $30,390), attorneys' fees ($616,667), and attorneys' costs ($50,000; the adjusted request based on Class Counsel's actual costs is $44,191.25), each of which are subject to Court approval.

[12] These estimations were based on the total number of Class Members (i.e., 632). Platt Decl. ¶ 14.

litigation and has assisted class counsel, by, among other things, obtaining critical documents, reviewing filings and otherwise assisting class counsel in the prosecution of [the] case." *Bacchi v. Mass. Mut. Life Ins. Co*., Civil Action No. 12-11280-DJC, 2017 U.S. Dist. LEXIS 184926, at *17-18 (D. Mass. Nov. 8, 2017). "In determining whether a service award is warranted, courts consider the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, [] and any negative effects that they have risked." *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *22 (internal citation omitted). In *Scovil*, a wage and hour action under the FLSA and Maine law, the court approved incentive awards from $15,000 to $20,000, recognizing that service awards of $10,000 to $15,000 are standard in wage and hour cases, and on occasion reach "$20,000, $30,000 and higher." *Id*.

Here, Plaintiffs seek service awards of $10,000 each for the four Named Plaintiffs to compensate them for the critical roles they played in this litigation, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Technicians. Each Named Plaintiff specifically agreed to, and did, put the Class and Collective's interests above themselves. They each cooperated with Class Counsel, and actively participated in the lawsuit. *See, e.g.,* Dkt. No. 141-1, Redacted Retainer Agreements, at pp. 5-8, 11-12. Each Named Plaintiff expended substantial time assisting in the prosecution of the claims in this protracted litigation, providing information to counsel, assisting in the drafting of pleadings and other documents, responding to discovery, drafting declarations, participating in settlement decisions, appearing at the preliminary approval hearing, and regularly discussing the facts and proceedings with Class Counsel.[13] This

---

[13] The Named Plaintiffs devoted upwards of 30-40 hours to this matter, and each provides a breakdown of their contributions. *See* Declarations of Robenson Jean-Pierre (Dkt. No. 131-1, pp.

Court recognized in its Preliminary Approval Order, that each Plaintiff was "actively involved in the prosecution of his claims." Dkt. No. 137, at p. 7. As a result of these efforts, hundreds of Technicians will receive the considerable recoveries discussed herein.

Moreover, pursuant to the Settlement, each Named Plaintiff has agreed to a general release of their claim, which is broader than the other Settlement Class and Collective members. Settlement ¶ 4.4.4. The requested Service Awards are also reasonable in light of the significant reputational risks each Named Plaintiff took by publicly affiliating themselves as Named Plaintiffs in a wage and hour action against their employer. *See* Edelstein Decl., Ex. A, 70:4-22 (Plaintiff Fauntleroy describing jokes about being blacklisted for filing a lawsuit). This substantial sacrifice supports the incentive awards sought here. *See Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *40-43 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $10,000 and $15,000 to class representatives and noting, *inter alia*, potential adverse actions by their employer or being "blacklisted" for future employment).  For all of these reasons, the requested Service Awards are reasonable and should be approved.

## VI.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue the proposed Order and Final Judgment and find that the proposed Settlement is fair, reasonable, and adequate; find that the notice procedure comported with Rule 23 and due process; grant final class certification as to the settlement Classes; finally approve of the requested service awards to the Class Representatives; and grant any other specified relief.

---

77-81), Jean Metelus (Dkt. No. 131-1, pp. 83-87), Bill McKee (Dkt. No. 131-1, pp. 89-93), and Michael Gary Fauntleroy (Dkt. No. 131-1, pp. 95-98); *see also* Dkt. No. 131-1 at pp. 100-134 (portion of Preliminary Approval Hearing Transcript discussing each Plaintiffs' participation in this action).

Dated: August 17, 2021

*/s/ Ori Edelstein*

Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

Alexandra K. Piazza
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
apiazza@bm.net

Sarah R. Schalman-Bergen
Matthew W. Thomson
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
ssb@llrlaw.com
mthomson@llrlaw.com

*Attorneys for Plaintiffs, the Collective and
Settlement Classes*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 17, 2021, a copy of this document was served by electronic filing on all counsel of record.

*/s/ Ori Edelstein*
Ori Edelstein